Art ROGERS, Plaintiff–Appellee–
Cross–Appellant,

v.

Jeff KOONS; Sonnabend Gallery,
Inc., Defendants–Appellants–
Cross–Appellees.

Nos. 234, 388 and 235, Dockets 91–
7396, 91–7442 and 91–7540.

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 1991.

Decided April 2, 1992.

John B. Koegel, New York City (Frank H. Wright, Michael D. Rips, Cathy Wright Isaacson, Wright Manning Rips & Maloney, of counsel), for defendants-appellants Jeff Koons and Sonnabend Gallery, Inc.

L. Donald Prutzman, New York City (Andre R. Jaglom, Stecher Jaglom & Prutzman, of counsel), for plaintiff-appellee Art Rogers.

Gregory F. Hauser, New York City (Walter, Conston, Alexander & Green, P.C., New York City, Louis A. Colombo, John D. Parker, Michael K. Farrell, Baker & Hostetler, Cleveland, Ohio, of counsel), filed a brief on behalf of United Feature Syndicate, Inc. as amicus curiae.

Before: CARDAMONE, PIERCE and WALKER, Circuit Judges.

CARDAMONE, Circuit Judge:

The key to this copyright infringement suit, brought by a plaintiff photographer against a defendant sculptor and the gallery representing him, is defendants' borrowing of plaintiff's expression of a typical American scene—a smiling husband and wife holding a litter of charming puppies. The copying was so deliberate as to suggest that defendants resolved so long as they were significant players in the art business, and the copies they produced bettered the price of the copied work by a thousand to one, their piracy of a less well-known artist's work would escape being sullied by an accusation of plagiarism.

## BACKGROUND FACTS

### A. *Rogers*

We think it helpful to understanding this appeal to set forth the principals' professional backgrounds. Plaintiff, Art Rogers, a 43–year–old professional artist-photographer, has a studio and home at Point Reyes, California, where he makes his living by creating, exhibiting, publishing and otherwise making use of his rights in his photographic works. Exhibitions of his photographs have been held in California and as far away as Maine, Florida and New York. His work has been described in French ("Le Monde"), British ("The Photo") and numerous American publications, including the Journal of American Photography, Polaroid's Close–Up Magazine and the Popular Photography Annual. Rogers' photographs are part of the permanent collection of the San Francisco Museum of

Modern Art, the Center for Creative Photography at the University of Arizona and Joseph E. Seagrams and Sons in New York City. He has taught photography at the San Francisco Museum of Modern Art.

### B. *Creating The Photograph "Puppies"*

In 1980 an acquaintance, Jim Scanlon, commissioned Rogers to photograph his eight new German Shepherd puppies. When Rogers went to his home on September 21, 1980 he decided that taking a picture of the puppies alone would not work successfully, and chose instead to include Scanlon and his wife holding them. Substantial creative effort went into both the composition and production of "Puppies," a black and white photograph. At the photo session, and later in his lab, Rogers drew on his years of artistic development. He selected the light, the location, the bench on which the Scanlons are seated and the arrangement of the small dogs. He also made creative judgments concerning technical matters with his camera and the use of natural light. He prepared a set of "contact sheets," containing 50 different images, from which one was selected.

After the Scanlons purchased their prints for $200, "Puppies" became part of Rogers' catalogue of images available for further use, from which he, like many professional photographers, makes his living. "Puppies" has been used and exhibited a number of times. A signed print of it has been sold to a private collector, and in 1989 it was licensed for use in an anthology called "Dog Days." Rogers also planned to use the picture in a series of hand-tinted prints of his works. In 1984 Rogers had licensed "Puppies", along with other works, to Museum Graphics, a company that produces and sells notecards and postcards with high quality reproductions of photographs by well-respected American photographers including, for example, Ansel Adams. Museum Graphics has produced and distributed the "Puppies" notecard since 1984. The first printing was of 5,000 copies and there has been a second similar size printing.

### C. *Koons*

Defendant Jeff Koons is a 37-year-old artist and sculptor residing in New York City. After receiving a Bachelor of Fine Arts degree from Maryland Institute College of Art in 1976, he worked at a number of jobs, principally membership development at the Museum of Modern Art in New York. While pursuing his career as an artist, he also worked until 1984 as a mutual funds salesman, a registered commodities salesman and broker, and a commodities futures broker. In the ten years from 1980 to 1990 Koons has exhibited his works in approximately 100 Group Exhibitions and in eleven one-man shows. His bibliography is extensive. Koons is represented by Sonnabend Gallery, New York, Donald Young Gallery, Chicago, and Galerie Max Hetzler, Cologne, Germany. His works sell at very substantial prices, over $100,-000. He is a controversial artist hailed by some as a "modern Michelangelo," while others find his art "truly offensive." A New York Times critic complained that "Koons is pushing the relationship between art and money so far that everyone involved comes out looking slightly absurd."

### D. *Creating the Sculpture "String of Puppies"*

After a successful Sonnabend show in 1986, Koons began creating a group of 20 sculptures for a 1988 exhibition at the same gallery that he called the "Banality Show." He works in an art tradition dating back to the beginning of the twentieth century. This tradition defines its efforts as follows: when the artist finishes his work, the meaning of the original object has been extracted and an entirely new meaning set in its place. An example is Andy Warhol's reproduction of multiple images of Campbell's soup cans. Koons' most famous work in this genre is a stainless steel casting of an inflatable rabbit holding a carrot. During 1986 and 1987 the sculptor traveled widely in Europe looking at materials and workshops where he might fabricate materials for the Banality Show. He decided to use porcelain, mirrors and wood as mediums. Certain European studios were chosen to execute his

porcelain works, other studios chosen for the mirror pieces, and the small Demetz Studio, located in the northern hill country town of Ortessi, Italy, was selected to carve the wood sculptures.

Koons acknowledges that the source for "String of Puppies" was a Museum Graphics notecard of "Puppies" which he purchased in a "very commercial, tourist-like card shop" in 1987. After buying the card, he tore off that portion showing Rogers' copyright of "Puppies." Koons saw certain criteria in the notecard that he thought made it a workable source. He believed it to be typical, commonplace and familiar. The notecard was also similar to other images of people holding animals that Koons had collected. Thus, he viewed the picture as part of the mass culture—"resting in the collective sub-consciousness of people regardless of whether the card had actually ever been seen by such people."

Appellant gave his artisans one of Rogers' notecards and told them to copy it. But in order to guide the creation of a three-dimensional sculptural piece from the two-dimensional photograph, Koons communicated extensively with the Demetz Studio. He visited it once a week during the period the piece was being carved by the workers and gave them written instructions. In his "production notes" Koons stressed that he wanted "Puppies" copied faithfully in the sculpture. For example, he told his artisans the *"work must be just like photo*—features of photo must be captured;" later, *"puppies need detail in fur. Details—Just Like Photo!;"* other notes instruct the artisans to *"keep man in angle of photo*—mild lean to side & mildly forward—same for woman," to "keep woman's big smile," and to "keep [the sculpture] very, very realistic;" others state, *"Girl's nose is too small. Please make larger as per photo;"* another reminds the artisans that "The puppies must have variation in fur *as per photo*—not just large area of paint—variation *as per photo.*" (emphasis supplied).

To paint the polychromed wood "String of Puppies" sculptures, Koons provided a chart with an enlarged photocopy of "Puppies" in the center; painting directions were noted in the margin with arrows drawn to various areas of the photograph. The chart noted, "Puppies, painted in shades of blue. Variation of light-to-dark *as per photo.* Paint realistic *as per photo,* but in blues." and "Man's hair, white with shades of grey *as per black and white photo!"* (emphasis supplied).

When it was finished, "String of Puppies" was displayed at the Sonnabend Gallery, which opened the Banality Show on November 19, 1988. Three of the four copies made were sold to collectors for a total of $367,000; the fourth or artist's copy was kept by Koons. Defendant Koons' use of "Puppies" to create "String of Puppies" was not authorized by plaintiff. Rogers learned of Koons' unauthorized use of his work through Jim Scanlon, the man who had commissioned Rogers to create "Puppies." A friend of Scanlon's, who was familiar with the photograph, called to tell him that what she took to be a "colorized" version of "Puppies" was on the front page of the calendar section of the May 7, 1989 Sunday *Los Angeles Times.* In fact, as she and Scanlon later learned, the newspaper actually depicted Koons' "String of Puppies" in connection with an article about its exhibition at the Los Angeles Museum of Contemporary Art.

## PRIOR PROCEEDINGS

Rogers brought this action against Koons and Sonnabend Gallery on October 11, 1989, alleging copyright infringement and unfair competition under § 43(a) of the Lanham Act and under state law. Both sides advised the district court at an early stage of the proceedings that, at least as to copyright infringement, disputed factual issues were unlikely and disposition on summary judgment would probably be appropriate. After completion of discovery, both sides moved for that relief on July 5, 1990. Rogers' motion was limited to the copyright infringement claim. Koons and the Sonnabend Gallery sought summary judgment dismissing all counts in plaintiff's complaint.

The district court held oral argument on November 26, 1990. In a December 10, 1990 decision, described more fully below, it found that Koons copied "Puppies" in "String of Puppies" and that this copying was not a fair use. It therefore found infringement, 751 F.Supp. 474. Rogers' motion for an infringing profits award was denied because the trial court believed there were disputed questions of fact concerning their computation. As to Sonnabend Gallery, the district court concluded on February 22, 1991 that the record showed Sonnabend's as well as Koons' liability for infringing profits. On March 27, 1991 it entered a permanent injunction enjoining Koons and Sonnabend Gallery from making, selling, lending or displaying any copies of, or derivative works based on, "Puppies," and, pursuant to 17 U.S.C. § 503, requiring defendants to deliver all infringing articles to plaintiff within 20 days, including the fourth or artist's copy of "String of Puppies."

When defendants failed to comply with the turn-over order, Rogers moved to hold defendant Koons in contempt. The proceedings on that motion revealed that nine days after the injunction was issued, Koons had loaned the fourth copy of "String of Puppies" to a museum in Germany and arranged for its shipment out of the United States. After a hearing on May 8, 1991 the district court held Koons in contempt, directed him to do whatever was necessary to effect the sculpture's return from Germany, and imposed a daily fine for continued non-compliance to commence eight days later.

On May 28, 1991 we denied Koons' motion to stay the injunction and the contempt penalty pending appeal, but delayed the commencement of the daily fine until June 7, 1991. From the finding of copyright infringement, the granting of a permanent injunction, and the turn-over order appellants Koons and Sonnabend appeal. Rogers cross-appeals from the denial of an award prior to trial for infringing profits. We affirm.

## DISCUSSION

### I Ownership of Copyright in an Original Work of Art

One of the powers given Congress under Art. I, § 8 of the United States Constitution is: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors, the exclusive Right to their respective Writings and Discoveries." Madison noted that "[T]he utility of this power will scarcely be questioned." The Federalist No. 43 (Madison) at 279. He further observed that copyright for authors was their right under common law. *Id.; see* 2 Blackstone, *Commentaries on the Laws of England* 407 (Univ. of Chicago ed. 1979). As a result, Congress enacted a copyright law, 17 U.S.C. § 101 *et seq.* (1976), under which the instant litigation was instituted.

To establish an infringement of a copyright, a plaintiff must show both ownership of a copyright and that defendant copied the protected material without authorization. *See Weissmann v. Freeman,* 868 F.2d 1313, 1320 (2d Cir.), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). The Copyright Act makes a certificate of registration from the U.S. Register of Copyrights *prima facie* evidence of the valid ownership of a copyright, *see* 17 U.S.C. § 410(c), though that presumption of ownership may be rebutted, *see Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985). Protection under the copyright statute extends to pictorial works, 17 U.S.C. § 102(a)(5). For more than a century photographs have been held to be copyrightable "writings" under Article I, § 8 of the Constitution. *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884) (photograph of Oscar Wilde an original work of art).

Of the several issues before us, the first concerns the originality of "Puppies." Defendants do not challenge plaintiff's ownership of a valid copyright, but assert instead that the portion of Rogers' work allegedly infringed was not an original work of authorship protected under the

1976 Copyright Act. Since the law protects authors' exclusive rights to their works, the cornerstone of that law is that the work protected must be original. *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* —— U.S. ——, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). Thus, that a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator. *Id.* 111 S.Ct. at 1289. But the quantity of originality that need be shown is modest—only a dash of it will do. *Id.* at 1287; 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1.08[C][1] (1991) (Nimmer).

■ Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved. *See Burrow Giles,* 111 U.S. at 60, 4 S.Ct. at 282. 1 Nimmer, § 2.08[E][1]. To the extent that these factors are involved, "Puppies" is the product of plaintiff's artistic creation. Rogers' inventive efforts in posing the group for the photograph, taking the picture, and printing "Puppies" suffices to meet the original work of art criteria. Thus, in terms of his unique expression of the subject matter captured in the photograph, plaintiff has established valid ownership of a copyright in an original work of art.

## II Unauthorized Copying by Defendant

■ Plaintiff next must demonstrate that defendant Koons copied his protected work without authorization. The district court granted summary judgment to Rogers on this issue, finding Koons' sculpture "String of Puppies" an unauthorized copy of Rogers' photograph. Summary judgment may be an appropriate remedy in copyright infringement suits. *See, e.g., Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.,* 295 F.Supp. 1366, 1369 (S.D.N.Y.), *aff'd,* 415 F.2d 1007 (2d Cir.1969). Yet, such relief will be denied when the question of substantial similarity is one on which reasonable minds could differ. *See, e.g.,*

*Twentieth Century–Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1329 (9th Cir. 1983).

Here, the trial court found original elements of creative expression in the copyrighted work were copied and that the copying was so blatantly apparent as not to require a trial. We agree that no reasonable juror could find that copying did not occur in this case. First, this case presents the rare scenario where there is direct evidence of copying. Koons admittedly gave a copy of the photograph to the Italian artisans with the explicit instruction that the work be copied. Moreover, the importance of copying the very details of the photograph that embodied plaintiff's original contribution—the poses, the shading, the expressions—was stressed by Koons throughout the creation of the sculpture. His instructions invariably implored that the creation must be designed "as per photo." This undisputed direct evidence of copying is sufficient to support the district court's granting of summary judgment.

■ Further, even were such direct evidence of copying unavailable, the district court's decision could be upheld in this case on the basis that defendant Koons' access to the copyrighted work is conceded, and the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on this issue. *See Warner Brothers, Inc. v. American Broadcasting Cos., Inc.,* 654 F.2d 204, 207 (2d Cir.1981).

Substantial similarity does not require literally identical copying of every detail. *See* 3 Nimmer, § 13.03[A]. *See also Comptone Company Ltd. v. Rayex Corp.,* 251 F.2d 487, 488 (2d Cir.1958). Such similarity is determined by the ordinary observer test: the inquiry is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab–Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir.1966). Or, stated another way, whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan*

*Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). Thus, Koons' allegation that a trial judge uneducated in art is not an appropriate decision-maker misses the mark; the decision-maker, whether it be a judge or a jury, need not have any special skills other than to be a reasonable and average lay person.

■ We recognize that ideas, concepts, and the like found in the common domain are the inheritance of everyone. What is protected is the original or unique way that an author expresses those ideas, concepts, principles or processes. Hence, in looking at these two works of art to determine whether they are substantially similar, focus must be on the similarity of the *expression* of an idea or fact, not on the similarity of the facts, ideas or concepts themselves. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2d Cir.1980). It is not therefore the idea of a couple with eight small puppies seated on a bench that is protected, but rather Roger's *expression* of this idea—as caught in the placement, in the particular light, and in the expressions of the subjects—that gives the photograph its charming and unique character, that is to say, makes it original and copyrightable.

Thus, had appellant simply used the *idea* presented by the photo, there would not have been infringing copying. But here Koons used the identical expression of the idea that Rogers created; the composition, the poses, and the expressions were all incorporated into the sculpture to the extent that, under the ordinary observer test, we conclude that no reasonable jury could have differed on the issue of substantial similarity. For this reason, the district court properly held that Koons "copied" the original.

■ Moreover, no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated. *See Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). Thus, where substantial similarity is found, small changes here and there made by the copier are unavailing. It is only where the points of dissimilarity exceed those that are similar and those similar are—when compared to the original work—of small import quantitatively or qualitatively that a finding of no infringement is appropriate. *See* 3 Nimmer § 13.-03[B][1][a]. This is not the case here. Koons' additions, such as the flowers in the hair of the couple and the bulbous noses of the puppies, are insufficient to raise a genuine issue of material fact with regard to copying in light of the overwhelming similarity to the protected expression of the original work.

Because of Koons' extensive use of the same expression of the idea that Rogers' created, it was properly held that he "copied" the protected features of the original. No genuine issue of material fact exists with respect to this finding; "String of Puppies" was copied from the photograph "Puppies" based either on the direct evidence of copying or on proof of access and substantial similarity. In light of this summary judgment was properly granted on this issue.

III The Fair Use Doctrine

Defendant Koons further defends his use of Rogers' work "Puppies" to craft "String of Puppies" under a claim of a privilege of "fair use." This equitable doctrine permits other people to use copyrighted material without the owner's consent in a reasonable manner for certain purposes. Codified in § 107 of the 1976 Copyright Act, it is of ancient lineage. Section 107 states that an original work copied for purposes such as criticism or comment may not constitute infringement, but instead may be a fair use. The section provides an illustrative—but not exhaustive—list of factors for determining when a use is "fair." These factors include (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the work used, and (4) the effect of the use on the market value of the original. 17 U.S.C. § 107.

The fact that the test envisioned by the Act is dependent on the circumstances of each case, *see* 3 Nimmer, § 13.05[A], might suggest summary judgment is unavailable

when fair use is the issue, but such relief may be granted when appropriate. *See e.g., Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (summary judgment granted upon finding of no fair use). The trial court found no genuine issues of fact present regarding the fair use exception and granted summary judgment to plaintiff on this issue also. We proceed therefore to analyze the fair use factors in the circumstances of the case at hand. Our examination of these factors leads us to conclude that the district court properly granted summary judgment in favor of plaintiff.

### 1. *Purpose and Character of the Use*

The first factor, purpose and character of the use, asks whether the original was copied in good faith to benefit the public or primarily for the commercial interests of the infringer. *See MCA, Inc. v. Wilson,* 677 F.2d 180, 182 (2d Cir.1981). Knowing exploitation of a copyrighted work for personal gain militates against a finding of fair use. And—because it is an equitable doctrine—wrongful denial of exploitative conduct towards the work of another may bar an otherwise legitimate fair use claim. *See* 3 Nimmer, § 13.05[A][1]. Relevant to this issue is Koons' conduct, especially his action in tearing the copyright mark off of a Rogers notecard prior to sending it to the Italian artisans. This action suggests bad faith in defendant's use of plaintiff's work, and militates against a finding of fair use.

■ The Supreme Court has held that copies made for commercial or profit-making purposes are presumptively unfair. *See Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 449, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984). The Court explained in a subsequent case that the "crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 562, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985). We have stated that, though it is a signifi-

cant factor, whether the profit element of the fair use calculus affects the ultimate determination of whether there is a fair use depends on the totality of the factors considered; it is not itself controlling. *See Maxtone–Graham v. Burtchaell,* 803 F.2d 1253, 1262 (2d Cir.1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987). Thus, while we note that Koons' substantial profit from his intentionally exploitive use of Rogers' work also militates against the finding of fair use, we turn next to consider his contention that the primary purpose of the use was for social comment.

*Parody or Satire as Fair Use:* The Act expressly provides that comment on or criticism of a copyrighted work may be a valid use under the fair use doctrine. We must analyze therefore whether "String of Puppies" is properly considered a comment on or criticism of the photograph "Puppies." Koons argues that his sculpture is a satire or parody of society at large. He insists that "String of Puppies" is a fair social criticism and asserts to support that proposition that he belongs to the school of American artists who believe the mass production of commodities and media images has caused a deterioration in the quality of society, and this artistic tradition of which he is a member proposes through incorporating these images into works of art to comment critically both on the incorporated object and the political and economic system that created it. These themes, Koons states, draw upon the artistic movements of Cubism and Dadaism, with particular influence attributed to Marcel Duchamp, who in 1913 became the first to incorporate manufactured objects (readymades) into a work of art, directly influencing Koons' work and the work of other contemporary American artists. We accept this definition of the objective of this group of American artists.

To analyze Koons' parody defense, we must first define it. Parody or satire, as we understand it, is when one artist, for comic effect or social commentary, closely imitates the style of another artist and in so doing creates a new art work that makes ridiculous the style and expression

of the original. Under our cases parody and satire are valued forms of criticism, encouraged because this sort of criticism itself fosters the creativity protected by the copyright law. *See Warner Bros., Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 242 (2d Cir.1983). We have consistently held that a parody entitles its creator under the fair use doctrine to more extensive use of the copied work than is ordinarily allowed under the substantial similarity test. *See Elsmere Music, Inc. v. National Broadcasting Co.,* 623 F.2d 252, 253 (2d Cir.1980) (per curiam).

Hence, it must first be determined whether "String of Puppies" is a parody of Rogers' work for purposes of the fair use doctrine. We agree with the district court that it is not. It is the rule in this Circuit that though the satire need not be only of the copied work and may, as appellants urge of "String of Puppies," also be a parody of modern society, the copied work must be, at least in part, an object of the parody, otherwise there would be no need to conjure up the original work. *See MCA, Inc. v. Wilson,* 677 F.2d at 185; 3 Nimmer, § 13.05[C] n. 60.9.

We think this is a necessary rule, as were it otherwise there would be no real limitation on the copier's use of another's copyrighted work to make a statement on some aspect of society at large. If an infringement of copyrightable expression could be justified as fair use solely on the basis of the infringer's claim to a higher or different artistic use—without insuring public awareness of the original work—there would be no practicable boundary to the fair use defense. Koons' claim that his infringement of Rogers' work is fair use solely because he is acting within an artistic tradition of commenting upon the commonplace thus cannot be accepted. The rule's function is to insure that credit is given where credit is due. By requiring that the copied work be an object of the parody, we merely insist that the audience be aware that underlying the parody there is an original and separate expression, attributable to a different artist. This awareness may come from the fact that the copied work is publicly known or because its existence is in some manner acknowledged by the parodist in connection with the parody. Of course, while our view of this matter does not necessarily prevent Koons' expression, although it may, it does recognize that any such exploitation must at least entail "paying the customary price." *Harper & Row Publishers, Inc.,* 471 U.S. at 562, 105 S.Ct. at 2231.

The problem in the instant case is that even given that "String of Puppies" is a satirical critique of our materialistic society, it is difficult to discern any parody of the photograph "Puppies" itself. We conclude therefore that this first factor of the fair use doctrine cuts against a finding of fair use. The circumstances of this case indicate that Koons' copying of the photograph "Puppies" was done in bad faith, primarily for profit-making motives, and did not constitute a parody of the original work.

### 2. *Nature of the Copyrighted Work*

The next fair use factor asks what is the nature of the work that has been copied. Where the original work is factual rather than fictional the scope of fair use is broader. *See New Era Publications, Int'l. v. Carol Publishing Group,* 904 F.2d 152, 157 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 297, 112 L.Ed.2d 251 (1990). Whether the original is creative, imaginative, or represents an investment of time in anticipation of a financial return also should be considered. *MCA, Inc. v. Wilson,* 677 F.2d at 182. Here "Puppies" was a published work of art. As an original expression it has more in common with fiction than with works based on facts, such as, for example, biographies or telephone directories. Since "Puppies" was creative and imaginative and Rogers, who makes his living as a photographer, hopes to gain a financial return for his efforts with this photograph, this factor militates against a finding of fair use.

### 3. *Amount and Substantiality of Work Used*

Where the amount of copying exceeds permissible levels, summary judg-

ment has been upheld. *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 758 (9th Cir.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). To a large degree, this factor involves the same analysis as that used when determining if the copy is substantially similar to the original. Sometimes wholesale copying may be permitted, while in other cases taking even a small percentage of the original work has been held unfair use. *See Maxtone-Graham*, 803 F.2d at 1263. "[W]hat is relevant is the amount and substantiality of the copyrighted *expression* that has been used, not the *factual content* of the material in the copyrighted works." *Salinger v. Random House, Inc.*, 811 F.2d 90, 97 (2d Cir.) (emphasis in original), *reh'g denied*, 818 F.2d 252, *cert. denied*, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987). It is not fair use when more of the original is copied than necessary. Even more critical than the quantity is the qualitative degree of the copying: what degree of the essence of the original is copied in relation to its whole. *Id.* at 98; *see also New Era Publications Int'l.*, 904 F.2d at 159.

Appellants claim that under a parody defense their use of Rogers' work did not exceed the level permitted under the fair use doctrine. As discussed previously, this Circuit has traditionally afforded parodists significant leeway with respect to the extent and nature of their copying. *See Elsmere*, 623 F.2d at 253, n. 1; *Berlin v. E.C. Publications, Inc.*, 329 F.2d 541, 545 (2d Cir.), *cert. denied*, 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964). Yet, even under such a defense there are limitations on what constitutes fair use. *See MCA v. Wilson*, 677 F.2d at 185. Here, the essence of Rogers' photograph was copied nearly *in toto*, much more than would have been necessary even if the sculpture had been a parody of plaintiff's work. In short, it is not really the parody flag that appellants are sailing under, but rather the flag of piracy. Moreover, because we have already determined that "String of Puppies" is not a parody of Rogers' work, appellants cannot avail themselves of this heightened tolerance under a parody defense.

Nor does *Sony Corp. of America*, 464 U.S. at 449–50, 104 S.Ct. at 792–93, bear the weight that appellants place on it for the proposition that even 100 percent copying does not preclude a fair use finding. Although correct as a general statement, it applied in *Sony* to a narrow set of circumstances. Sony's copying equipment (Betamax VCRs) was used by members of the public to record television programs—the copyright of which was owned by plaintiffs. The question was whether Sony's selling of the copying equipment violated plaintiffs' rights under the Copyright Act. The Supreme Court said "no" because "time-shifting" for those watching a television program enlarges the viewing audience, and does not impair plaintiffs' commercial right in the value of the copyright. Hence, no basis existed under the Act upon which plaintiffs could hold Sony liable for selling VCR's to the general public. *Id.* at 421, 104 S.Ct. at 778.

Those are not the facts found here. Instead, Koons' copying of Rogers' work was the essence of the photograph, and designedly done as the notes to the Italian artisans conclusively reveal. Koons went well beyond the factual subject matter of the photograph to incorporate the very expression of the work created by Rogers. We find that no reasonable jury could conclude that Koons did not exceed a permissible level of copying under the fair use doctrine.

### 4. Effect of the Use on the Market Value of the Original

The fourth factor looks at the effect of the use on the market value of the original. The Supreme Court in *Stewart*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184, stated that the fourth factor "is the 'most important, and indeed, central fair use factor.'" *Id.* at 238, 110 S.Ct. at 1769 (quoting 3 Nimmer § 13.05[A]); *see also Harper & Row*, 471 U.S. at 566, 105 S.Ct. at 2233. Under this factor a balance must be struck between the benefit gained by the copyright owner when the copying is found an unfair use and the benefit gained by the public when the use is held to be fair. The less adverse impact on the owner, the less

public benefit need be shown to sustain non-commercial fair use. It is plain that where a use has no demonstrable impact on a copyright owners' potential market, the use need not be prohibited to protect the artist's incentive to pursue his inventive skills. Yet where the use is intended for commercial gain some meaningful likelihood of future harm is presumed. *See Sony Corp. of America,* 464 U.S. at 451, 104 S.Ct. at 793.

A critical inquiry under this factor then is whether defendants Koons and Sonnabend planned to profit from their exploitation of "Puppies" without paying Rogers for their use of his photo—that is, whether Koons' work is primarily commercial in nature. We have already concluded that it is. In this case, of course, the copy was in a different medium than the original: one was a three-dimensional piece of sculpture, and the other a two-dimensional black and white photo. But the owner of a copyright with respect to this market-factor need only demonstrate that if the unauthorized use becomes "widespread" it would prejudice his potential market for his work. *See id.; Harper & Row,* 471 U.S. at 568, 105 S.Ct. at 2234. The reason for this rule relates to a central concern of copyright law that unfair copying undercuts demand for the original work and, as an inevitable consequence, chills creation of such works. Hence the inquiry considers not only harm to the market for the original photograph, but also harm to the market for derivative works. It is obviously not implausible that another artist, who would be willing to purchase the rights from Rogers, would want to produce a sculpture like Rogers' photo and, with Koons' work extant, such market is reduced. Similarly, defendants could take and sell photos of "String of Puppies," which would prejudice Rogers' potential market for the sale of the "Puppies" notecards, in addition to any other derivative use he might plan.

Further, in discussing this fourth factor, the leading scholar in this area of the law uses an example that closely parallels the facts of the present case and demonstrates the irrelevance of copying in a different medium when analyzing this factor: a movie adaptation is made of a book. Even though the movie may boost book sales, it is an unfair use because of the effect on the potential sale of adaptation rights. 3 Nimmer, § 13.05[B]. The function of demand for each original work of art is a relevant facet in this factor's analysis; that is, fair use permits lyrics or music to be copied in a literary magazine, but where the same material is published in a song sheet magazine, purchased for playing and not simply for reading, it is an unfair use. *Id.*

Here there is simply nothing in the record to support a view that Koons produced "String of Puppies" for anything other than sale as high-priced art. Hence, the likelihood of future harm to Rogers' photograph is presumed, and plaintiff's market for his work has been prejudiced.

## IV Infringing Profits

 The next issue concerns Rogers' claim for infringing profits in the amount of $367,000. Under 17 U.S.C. § 504(b) a copyright owner is entitled to recover actual damages suffered as a result of the infringement as well as apportioned profits. The section states: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Alternatively, in place of actual damages and apportioned profits, a copyright owner may elect to recover an award of statutory damages. *See* 17 U.S.C. § 504(c).

In Rogers' cross-appeal he asserts, in response to defendants' argument that we lack appellate jurisdiction over this issue, that jurisdiction exists on two independent bases. He further contends that there are no issues of fact and that the matter should be remanded simply to enter an award in his favor. Although we agree with Rogers that jurisdiction over this aspect of the judgment appealed from exists, we are unable to grant the award he seeks.

The district court stated that deposition and documentary evidence regarding the deductible expenses referred to in § 504(b) are present in the record. We are satisfied that defendants have incurred deductible expenses in some amount and that they should have an opportunity to prove them as an offset to plaintiff's evidence of infringing damages. Further, the amount of actual damages incurred by Rogers, as well as the proper apportionment of Koons' profits between Rogers and Koons, remain to be determined on remand. With respect to the calculation of actual damages, "the primary measure of recovery is the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1118 (2d Cir.1986). While we leave the ascertainment of damages to the district court, under the circumstances of this case, we think that a reasonable license fee for the use of "Puppies" best approximates the market injury sustained by Rogers as a result of Koons' misappropriation. *See Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 360–61 (7th Cir.1985) ("The value of the infringer's use is a permissible basis for estimating actual damages."); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir.1977) (same).

On the subject of apportioning profits, the copyright law requires that Koons have the opportunity to establish those "elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). These "elements" may include Koons' own notoriety and his related ability to command high prices for his work. *See Sheldon v. Metro–Goldwyn Corp.*, 309 U.S. 390, 407–09, 60 S.Ct. 681, 687–88, 84 L.Ed. 825 (1940) (considering "the drawing power of the 'motion picture stars' ... the artistic conceptions ... and ... the expert supervision and direction of the various processes which made possible the composite result"); *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990)

("Where a defendant alters infringing material to suit its own unique purposes, those alterations and the creativity behind them should be taken into account in apportioning the profits of the infringing work."); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1478, *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (considering outstanding performances and brilliant direction); *ABKCO Music, Inc. v. Harrisongs Music*, 508 F.Supp. 798, 801 (S.D.N.Y.1981), *modified*, 722 F.2d 988 (2d Cir.1983) (considering "international 'name'" of infringing recording artist). *See also* 3 Nimmer § 14.03[C]. To the extent that Koons is able to prove that the profits at issue derive solely from his own position in the art world, he should be allowed to retain them.

Finally, we note that Rogers remains at liberty to elect statutory damages in lieu of an award of actual damages and apportioned profits. *See* 17 U.S.C. § 504(c). In fact, given Koons' wilful and egregious behavior, we think Rogers may be a good candidate for enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2). *See Fitzgerald Pub. Co.*, 807 F.2d at 1115. Of course, that determination remains for the district court to make in the first instance.

The case must be remanded therefore for the district court to determine the amount of the award, a matter which it had reserved to itself prior to the institution of this appeal.

## V The Turn–Over Order

Finally, the turn-over order of the artist's copy is an equitable remedy issued under the broad powers vested in a trial judge under 17 U.S.C. § 503(b) (court may order destruction or other reasonable disposition of infringing copies). In this case, after Judge Haight issued his turn-over order, Koons arranged to ship the fourth or artist's copy of "String of Puppies" from the United States to Germany. We see no abuse of the district court's discretion in directing turn-over and, under the circumstances, the contempt order for the direct violation of the turn-over order was entirely proper.

## CONCLUSION

Accordingly, the judgment of the district court is affirmed in all respects.