**MODERN PUBLISHING, A DIVISION OF UNISYSTEMS, INC., Plaintiff,**

v.

**LANDOLL, INC., Defendant.**

**No. 93 Civ. 0301 (CSH).**

United States District Court, S.D. New York.

Jan. 10, 1994.

---

Schwartzman Weinstock Garelik & Mann, P.C., New York City (Howard L. Mann, Donald A. Pitofsky, of counsel), for plaintiff.

James and Franklin, New York City (Robert L. Epstein, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This copyright case, in which plaintiff and defendant cross-move for summary judgment on the issue of infringement, requires the Court to consider the extent of copyright protectibility where the same artist creates derivative works based the same object in the public domain.

### Background

At the center of this litigation stands the Troll. The Troll is "a supernatural creature of Scandinavian folklore variously portrayed as a friendly or mischievous dwarf, or sometimes giant, that lives in caves, in the hills, or under bridges." *American Heritage Dictionary of the English Language, New College Edition* (1976) at 1375. In or about 1959 a citizen of Denmark, Thomas Dam, created Troll dolls which he thereafter exported to the United States for sale. Because Dam's company sold or publicly distributed its Troll dolls in the United States without copyright

notice, they passed into the public domain. That status was adjudicated in *Scandia House Enterprises, Inc. v. Dam Things Establishment,* 243 F.Supp. 450 (D.D.C.1965).

Plaintiff Modern Publishing ("Modern") and defendant Landoll, Inc. both publish, among other items, coloring books for children. Modern retained a free-lance artist named Arthur Friedman to create and illustrate coloring books and activity pads featuring Trolls, and copyrighted the results. Landoll then retained the same artist to create and illustrate Troll coloring books. Not surprisingly, plaintiff sued defendant for copyright infringement, adding pendent state and common law claims. The case is before the Court on the parties' cross-motions under Rule 56, Fed.R.Civ.P., for partial summary judgment on the issue of infringement.

In January 1992 Modern engaged Friedman to create original cover art, based upon the public domain Troll, for a series of Troll coloring books that Modern intended to publish. After approving Friedman's cover art, Modern entered into a written agreement with him dated February 19, 1992. Modern agreed to engage Friedman to create and draw, in addition to the covers, the interior pages for four Troll coloring and activity books. Friedman executed that commission during the period February–April, 1992. He also created for Modern two flip-page activity pads illustrated by Trolls. Friedman assigned to Modern all of his rights, including all copyrights, in these works.

Modern secured registrations of copyright of derivative works for each of the six publications illustrated by Friedman. With respect to the four activity books, each certificate of registration identifies Friedman as one of two authors of the copyrighted work. The nature of Friedman's authorship is described as "cover and interior illustration." The other author is identified as Bud Simpson, whose nature of authorship is described as "writer." Each certificate recites that Modern is the copyright claimant by virtue of "written assignment." Each certificate, under item 6A, covering derivative works, identifies as the preexisting material "public domain troll dolls," and specifies as material added to that work "interior text

and illustrations including original modification of materials in item 6A." The certificates of registration for the two activity pads list Friedman and Pattie Silver–Thompson as co-authors. The nature of Friedman's authorship is described as "cover illustration," and that of Silver–Thompson as "interior illustrations." Item 6A on the certificate identifies the preexisting material as "public domain troll dolls," and specifies, as material added to this work, "interior text and original illustrations including original modification of materials in item 6A." Unlike the certificates for the four activity books, the author of the added text is not identified; but in the view I take of the case, that is not a material omission.

It is common ground that in May 1992 Landoll retained Friedman to illustrate four Troll activity books which Landoll then marketed. Tonda Rae Nalle was the Landoll employee who negotiated with Friedman. In a letter dated June 2, 1992 Nalle advised Friedman of the subject matter of the desired covers (Trolls engaged in skate boarding, playing in a band, flying kites, and at the beach). Nalle also instructed Friedman in that letter: "Please key them similarly to the ones you did for Modern—neuter, no clothes."

When Modern became aware of Landoll's Troll activity books illustrated by Friedman, it sent Landoll a cease and desist letter. Landoll took the position that there had been no copyright infringement. This suit followed.

### Discussion

The Court has before it a full set of the parties' publications. The Second Circuit has held that where proof of unauthorized copying of protectible material rises to the level where no reasonable juror could find otherwise, a copyright holder is entitled to summary judgment on the issue of infringement. *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). Conversely, where the similarity demonstrated pertains solely to noncopyrightable material, summary judgment for the accused infringer

is appropriate. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 915 (2d Cir.1980).

Landoll relies upon the latter of these principles because, in its view, Friedman's Troll illustrations are not protectible by copyright as a matter of law. Landoll stresses that the Troll is in the public domain. It relies upon the well-established rule that "ideas, concepts, and the like found in the common domain are the inheritance of everyone," so that what copyright law protects "is the original or unique way that an author expresses those ideas, concepts, principles or processes." *Rogers v. Koons* at 308. From these general considerations, Landoll derives the specific conclusion that all Modern can protect against copying "are the particular poses and layouts in which the Trolls are depicted in plaintiff's copyrighted works." Main brief at 9. Because Landoll's activity books show the Trolls pursuing different activities and striking different poses from those depicted in Modern's publications, the argument concludes, there is no infringement.

■ This analysis is flawed in several respects. Landoll's construction of the copyright registrations Modern obtained is unreasonably narrow. The Copyright Act provides that a certificate of registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The certificate "establishes a presumption of originality in the work registered." *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 700 F.Supp. 1213, 1231 (S.D.N.Y.1988). The presumption of originality conferred by a certificate of registration is inherent in the statutory scheme, since only "original works of authorship" are entitled to copyright protection. 17 U.S.C. § 102(a). *See also Rogers v. Koons* at 307 ("Since the [Copyright Act] protects authors' exclusive rights to their works, the cornerstone of that law is that the work protected must be original.").

■ The prima facie evidence of copyright validity resulting from the certificate shifts to the alleged infringer "the burden of proving the contrary." *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 193 (2d Cir.1985). In the case at bar, Landoll offers no proof that Modern's copyrights are invalid. Rather, it seeks to narrow the protection conferred by the copyrights. But that effort is unpersuasive. Each certificate identifies Friedman's work as derived from the public domain troll dolls. The statute defines a "derivative work" as "a work based upon one or more preexisting works," existing in a form "in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Modern claimed at the time of registration that Friedman added to the preexisting public domain troll dolls "original illustrations" which included "original modification of" those dolls. The certificates, when issued, constitute prima facie (and unrebutted) evidence that Friedman's illustrations of the dolls are original and hence protectible. And it is the illustrations themselves—that is to say, Friedman's artistic rendering of the three-dimensional dolls in two-dimensional pictorial form—that are protectible, not the particular postures or poses in which those illustrations are arranged in Modern's publications.

■ Furthermore, Landoll's contentions give insufficient regard to the rule in this circuit that a relatively modest amount of originality suffices for copyright protection. *Rogers v. Koons* is instructive on that score. The protected work was a photograph of two adults sitting on a bench holding a litter of puppies. Adults, benches, and puppies are in the public domain. But the case involved a photograph of unprotectible objects; and the Second Circuit identified as "elements of originality" in a photograph "posing the subjects, lighting, angle, selection of film and camera, and almost any other variant involved." *Id.* at 307. While recognizing that the copyrighting of a whole work "does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator," the Second Circuit added: "But the quantity of originality that need be shown is modest—only a dash of it will do." The court of appeals concluded that the photographer's "inventive efforts in posing the group for the photograph, taking the picture, and printing 'Puppies' suffices to meet the original work of art criteria." *Id.*

In the case at bar the troll dolls, residents of the public domain, are the analogues to the puppies in *Rogers v. Koons.* The requirement that Friedman's derivative illustrations contain at least a "dash" of originality is more than satisfied by the distinctive pupils of his Trolls' eyes (small green circles within larger yellow circles), their sharply pointed and elongated ears, and their varying facial expressions. The elements of originality present in Friedman's illustrations may be discerned by comparing those illustrations with the four Troll dolls Landoll attached as Exhibits B, C, D, and E to the affidavit of Robert L. Epstein, its attorney. Their ears are not pointed and the eyes are quite different.

Accordingly I conclude that Friedman's depictions of Trolls appearing in Modern's publications are protected by the copyrights Modern is entitled to enforce. I reject Landoll's contention that only the particular poses and postures in which those figures appear are protectible.

■ To establish an infringement of a copyright, a plaintiff must show both ownership of a valid copyright and that defendant copied the protected material without authorization. *Rogers v. Koons* at 306, citing *Weissmann v. Freeman,* 868 F.2d 1313, 1320 (2d Cir.), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). For the reasons stated, Modern has shown the first element. It is manifest that Modern has also shown that Landoll copied the protected work without authorization.

■ Landoll does not suggest that it obtained Modern's authority to publish the Troll illustrations Landoll commissioned Friedman to create. The remaining issue is copying. Copying may be proved by direct evidence, a "rare scenario," *Rogers v. Koons* at 307, or by proof of defendant's access to the protected work and such substantial similarity between the works that copying may be inferred. Where "the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on this issue," the copyright owner is entitled to

summary judgment. *Rogers v. Koons* at 307, citing *Warner Brothers, Inc. v. American Broadcasting Cos., Inc.,* 654 F.2d 204, 207 (2d Cir.1981).

Modern contends that Nalle's June 2, 1992 letter to Friedman, requesting Friedman to "key" his Troll illustrations for Landoll "similarly to the ones you did for Modern," is "smoking gun" evidence of direct copying by Landoll. Nalle's affidavit and that of Martin Myers, Landoll's president, contest that claim. The case for Landoll is that it had no prior knowledge of the Modern publications; that Nalle mentioned Modern in her letter to Friedman only because Friedman told her on the telephone that he had just prepared naked and sexless Troll illustrations for Modern and Nalle intended only to request comparable Trolls for Landoll; and that Nalle emphasized to Friedman "that the drawings for Landoll had to be different from Modern's, and had to look unique to Landoll." Nalle affidavit at ¶ 12.[1]

■ These contentions give rise to genuine issues of fact. But they are not material facts, as that phrase is used in Rule 56(c), and accordingly do not preclude summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Landoll's proof at trial might negate a theory of direct and deliberate copying by Landoll. But such proof is not essential to Modern's infringement claim under governing law. As noted, proof of access and substantial similarity will suffice. Landoll's retention of Friedman establishes its access to the original Troll illustrations Friedman created for Modern. Access to the creator implies access to his creations. And the Troll depictions in the Landoll publications are virtually identical to those in the Modern publications. Since Friedman drew them all, that is not surprising. In short, Landoll's

---

1. Landoll's affidavits and briefs seek to make use of declarations Friedman made to Nalle and Myers. Friedman declined to give an affidavit to Landoll's counsel. His declarations, offered for their truth, are not admissible in evidence, and I disregard them. *See* Rule 56(e).

Troll publications infringe Modern's copyrights.

■ Landoll argues that "[a]n artist does not sell the right to use his artistic style when he sells his drawings." Reply brief at 3. But an artist who creates an original work entitled to copyright protection may choose between copyrighting it himself or assigning ownership of copyright to another. In the case at bar Friedman chose the latter course. Landoll must accept the legal consequences.

### Conclusion

Plaintiff's motion for partial summary judgment on the issue of infringement is granted. Defendant's cross-motion is denied. Counsel for plaintiff are directed to settle an Order of Permanent Injunction consistent with this Opinion on seven (7) days' notice within ten (10) days of the date hereof.

The parties are directed to complete pretrial discovery on plaintiff's additional claims not later than April 8, 1994, and to attend a status conference in Room 307 at 2:00 p.m. on April 22, 1994.

It is SO ORDERED.