| | | | G+W Liability | With Prejudgment Interest From 9/30/87 | With Prejudgment Interest From 9/30/81 |
|---|---|---|---|---|---|
| **SCENARIO VI** | | | | | |
| The Full Funding Amounts Computed on | a) | G+W: | $2,611,724 | $4,574,055 | $ 8,960,871 |
| the Basis of the 9.5% Effective Discount | b) | PBGC: | $3,518,449 | $6,162,052 | $12,071,861 |
| Rate and Grown at 11.86% | c) | Kinek: | $3,570,734 | $6,253,621 | $12,251,252 |
| **SCENARIO VII** | | | | | |
| | a) | G+W: | $2,611,724 | $5,079,584 | $11,285,199 |
| The Full Funding Amounts Computed on | b) | PBGC: | $3,518,449 | $6,843,088 | $15,203,137 |
| the Basis of the 9.5% Effective Discount Rate and Grown at 14.23% | c) | Kinek: | $3,570,734 | $6,944,778 | $15,429,059 |

**UNITED FEATURE SYNDICATE, INC., Plaintiff,**

v.

**Jeff KOONS, Defendant.**

**No. 89 Civ. 8067 (PKL).**

United States District Court, S.D. New York.

March 24, 1993.

Walter, Conston, Alexander & Green, P.C. (Gregory F. Hauser, of counsel), New York City, Baker & Hostetler (Louis A. Colombo, John D. Parker, Michael K. Farrell, of counsel), Cleveland, OH, for plaintiff.

John B. Koegel, New York City, for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action for copyright infringement, dilution, and unfair competition based upon defendant Jeff Koons' ("Koons") production of four identical sculptures entitled "Wild Boy and Puppy" which allegedly contain unauthorized copies of the Garfield comic strip character "Odie." Plaintiff United Feature Syndicate, Inc. ("UFS") has moved for partial summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, as to defendant Koons' liability on the copyright infringement claims. For the reasons stated below, the motion is granted in its entirety.

## BACKGROUND

Plaintiff UFS owns all right, title and interest in the copyrights covering the Garfield comic strip, which focuses on the life of "Garfield the Cat" and his interaction with several other characters. The Garfield comic strip was created in 1978 by James R. Davis and, since that time, has become one of the most famous comic strips in the United States. The Garfield comic strip currently appears in over 2,000 newspapers in the United States and around the world. In addition to the comic strip, plaintiff also possesses approximately 400 licenses for products or uses of the various Garfield characters, including the television production of the Garfield animation programs.

By virtue of its ownership of the copyright interest covering the Garfield comic strip, UFS also owns the copyright in the various characters. Among the most prominent and well-known of the Garfield comic strip characters is the dog "Odie" which has been regularly featured in the comic strip, in both likeness and name, since the strip's inception. It is the alleged unauthorized use of the "Odie" character in one of defendant's sculptures which forms the basis of the instant action.

Defendant Koons is an accomplished visual artist whose primary activities are in the creation of sculptural works of art. Koons is part of a contemporary artistic movement which takes images from popular culture and "re-contextualizes" them in a work of art in an effort to convey a certain message or idea to the viewer. This movement is sometimes categorized as "Pop Art" with Andy Warhol's reproduction of multiple images of Campbell's soup cans being a widely recognized example of this artistic tradition.

In October, 1986, after a successful presentation of certain stainless steel sculptures at the Sonnabend Gallery in New York City, Koons began working on his next set of sculptural works of art which would further develop the thoughts and themes expressed in the October exhibition. During the remainder of 1986 and throughout 1987, Koons travelled throughout the world looking for exotic materials, such as porcelain, which could be used for his next exhibition at the Sonnabend Gallery and also choosing workshops that were skilled at crafting such materials. Koons ultimately decided to use three types of materials for his next set of works: mirrors, wood, and porcelain. During this same period, Koons also collected the popular images and ideas which he could transform into works of sculpture. According to Koons, he would accumulate images from popular culture by cutting out items that he read or by purchasing objects during the course of his travels and then, at some later point, would begin the process of "re-contextualizing" these images into sculptures.

Koons decided that the unifying theme of this upcoming exhibition would be "banality." The exhibition focused on popular attitudes toward objects and facts of everyday life which were commonplace and Koons referred to this exhibition as the "Banality Show." Koons did not physically make any of the sculptures for this Banality Show. Instead, Koons was the "producer" of the sculptures—that is, he thought of the ideas for the sculptures and made the decision as to the materials to be used, as well as the sculpture's form, shape, size, and color. While he had absolute control over the production of the sculptures, the sculptures were physically manufactured by artisans who made the sculptures to Koons' specifications. During 1988, Koons worked with the studios and artisans who were commissioned by him to produce 20 separate sculptural works for the

Sonnabend exhibition. Koons commissioned the artisans to create three "editions," or copies, of each sculpture, as well as an "artist's proof" which is not offered for sale but rather is kept by Koons as documentation of his work. On November 19, 1988, the "Banality" exhibition opened at the Sonnabend Gallery.

One of the twenty sculptures produced by Koons for this exhibition is entitled "Wild Boy and Puppy" and is the subject of this lawsuit.[1] UFS contends that the "Puppy" in the sculpture is an unauthorized copy of the "Odie" character from the Garfield comic strip. In his deposition, Koons admits that the "Puppy" in the sculpture is based on a picture of the "Odie" character. According to Koons, he designed the sculpture by cutting out a color picture of "Odie" (the "Puppy") and placing it next to a cut-out image of a stuffed doll (the "Wild Boy") to form a collage which was used as the design for the sculpture. Deposition of Jeff Koons, sworn to on July 2, 1990 ("Koons Deposition"), at 63–64, 66–67, 91–94, annexed as Exhibit B to the Affidavit of John D. Parker, Esq., in Support of Plaintiff's Motion for Partial Summary Judgment, sworn to on January 15, 1991 ("Parker Affidavit"); *see also* Exhibit H to the Parker Affidavit (collage of "Wild Boy and Puppy"). Koons was unable to recall with certainty where he obtained the image of "Odie" used in the collage, but stated that he obtained it from some media source, such as a postcard or magazine. Koons Deposition, at 67, 92. The image of the "Wild Boy" is based on a stuffed toy doll that Koons found in Europe. Affidavit of Jeff Koons, sworn to on February 8, 1991 ("Koons Affidavit"), at ¶ 19.

According to Koons, he instructed the artisan who physically constructed the sculpture to reproduce the pictures of "Odie" and the doll contained in the collage as closely as possible. Koons Deposition, at 93–94. Koons explained that he had the artisan copy the pictures as closely as possible so that he could maintain control over the end product. *Id.* Thus, the only deviation between the

sculpture of the "Odie" character and the copyrighted picture of the "Odie" character used by Koons was the three-dimensional nature of the sculpture, as well as a technical change in the relative length of "Odie's" tongue which was made to give the sculpture additional structural stability. In addition, the sculpture of "Odie" was obviously larger than the picture of "Odie" contained in the collage, but the scale of the character, in relation to the other image (the "Wild Boy"), remained virtually the same. *Id.* at 93–94 and Exhibit H. At some later point, Koons instructed the artisan to add a third image, the butterfly-bee figure, to the sculpture. *Id.* at 62.

At Koons' direction, four identical porcelain sculptures of "Wild Boy and Puppy" were produced. Sonnabend Gallery displayed the "Wild Boy and Puppy" sculpture as part of the Banality Show which opened on November 19, 1988. Two of the four sculptures of the "Wild Boy and Puppy" were sold to collectors by Sonnabend Gallery for $125,000 each. The ownership of the third sculpture was retained by Ileana Sonnabend for her private collection. Koons owns the fourth copy of the sculpture which is referred to as the "artist's proof." The various sculptures displayed in the Banality Show attracted substantial media coverage, including a feature in *People* magazine, annexed as Exhibit G to the Parker Affidavit, which displayed a large picture of Koons surrounded by the three images contained in the "Wild Boy and Puppy" sculpture. Neither Koons nor Sonnabend Gallery sought UFS's permission to use "Odie" in the sculpture or informed UFS of their intended use of "Odie."

Plaintiffs filed the instant action on December 6, 1989, alleging several causes of action based upon the alleged unauthorized use of the "Odie" character in the "Wild Boy and Puppy" sculpture including: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.;* (2) copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.;* (3) dilution under Sec-

---

1. A photograph of the "Wild Boy and Puppy" sculpture is annexed as an Appendix to this

Opinion and Order.

tion 368–d of New York's General Business Law; and (4) common-law unfair competition under New York law. The complaint seeks both injunctive relief and monetary damages. Sonnabend Gallery was originally named as a defendant in this action along with Koons. However, Sonnabend Gallery and plaintiff subsequently reached a Settlement Agreement and, on January 19, 1993, the Court, by stipulation of the parties, ordered that the claims in the instant action as to Sonnabend Gallery be dismissed with prejudice. Thus, the only remaining defendant is Jeff Koons.

Plaintiff has moved for partial summary judgment against defendant Koons on the issue of liability with respect to the copyright claims, contained in Counts II and III, which allege that the manufacture and sale of these sculptures infringe upon UFS's copyrights in the comic strip character "Odie." Defendant Koons contends, *inter alia*, that the "Wild Boy and Puppy" sculpture is protected under the fair use doctrine as a parody and that there are disputed issues of material fact which preclude summary judgment in plaintiff's favor on the issue of liability.[2]

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *see also Lang*, 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of sum-

---

**2.** Defendant Koons filed a cross-motion for partial summary judgment, dated February 15, 1991, seeking to dismiss the copyright claims. On June 3, 1991, the Court stayed the cross-motions for summary judgment pending a decision by the Second Circuit in *Rogers v. Koons*, 89 Civ. 6707 (CSH), which was a copyright action involving similar motions with respect to another sculpture produced by Koons as part of the Banality Show. On April 2, 1992, the Second Circuit issued its decision in *Rogers v. Koons*, 960

F.2d 301 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), granting summary judgment for plaintiff. On May 22, 1992, at a conference before the Court, counsel for defendant Koons indicated that the cross-motion for summary judgment was withdrawn. *See* Affirmation of John B. Koegel, Esq., dated July 16, 1992. The parties, at the request of the Court, submitted supplemental memoranda of law addressing the effect of the *Rogers* decision on plaintiff's motion for summary judgment.

mary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)), *cert. denied*, —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quotations omitted); *see also Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir.1992) ("[The Court must] consider the record in the light most favorable to the nonmovant. However, the non-movant may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted).

## II. THE SECOND CIRCUIT'S DECISION IN *ROGERS v. KOONS*

In a recent decision, *Rogers v. Koons*, 960 F.2d 301 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), the Second Circuit addressed a copyright claim against Koons with respect to another sculpture, entitled "String of Puppies," which Koons also produced and displayed at the Banality Show. The factual circumstances in *Rogers* are very similar to the instant case and many of the same legal issues are involved. In that case, Koons designed the "String of Puppies" sculpture at issue by using an Art Rogers' copyrighted photograph "Puppies" contained on a Museum Graphics notecard which Koons purchased in a card shop in 1987. Koons tore off the portion of the card bearing the copyright notice of "Puppies," sent the card to his artisans and instructed them to copy the photograph as closely as possible. Koons had four copies of the "String of Puppies" sculpture made. Three of the copies were sold by Sonnabend Gallery to collectors for a total of $367,000, and Koons retained the fourth copy of the sculpture as an "artist's proof." *Id.* 960 F.2d at 305.

The plaintiff moved for summary judgment in *Rogers* and, in his opposition papers, Koons argued, *inter alia*, that his transformation of the "Puppies" photograph into the "String of Puppies" sculpture constituted a work of art which fell within the protection of the fair use doctrine as a parody or social comment on society at large. *Id.* at 309. In granting summary judgment in plaintiff's favor on the copyright claim, the District Court held that the "String of Puppies" sculpture was copied from the "Puppies" photograph without authorization and that such use was not protected under the fair use doctrine. The Second Circuit upheld the Court's summary judgment determination and emphasized that "it is not really the parody flag that appellants are sailing under, but rather the flag of piracy." 960 F.2d at 311. In reaching this decision, the Second Circuit rejected virtually every legal argument which

Koons has asserted in the instant case in opposition to UFS's similar motion for summary judgment.

The *Rogers* decision involved a different work of art than the sculpture at issue here and this Court will obviously base its decision on UFS's summary judgment motion solely on the record developed in the instant case. Nevertheless, given the factual similarities between the cases, the *Rogers* decision does provide a helpful framework in which the Court can examine the legal issues presented by the parties in the instant motion. Defendant Koons argues that there are differences between the sculpture in *Rogers* and the "Wild Boy and Puppy" sculpture at issue in the instant case which make *Rogers* inapposite and require the Court to deny UFS's summary judgment motion in its entirety. However, as explained below, the Court has examined the record in the instant case and finds that summary judgment in UFS's favor is appropriate on the issue of liability with respect to the copyright claims.

## III. ELEMENTS OF COPYRIGHT INFRINGEMENT

■ The copyright laws have long recognized that copyright protection is available for cartoon and comic strip characters. *See, e.g., Warner Bros. Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 240 (2d Cir.1983) (Superman); *Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 754–55 (9th Cir. 1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979) (Mickey Mouse and other Disney characters); *Detective Comics v. Bruns Publications,* 111 F.2d 432, 433 (2d Cir.1940) (Superman); *King Features Syndicate v. Fleischer,* 299 F. 533, 535 (2d Cir.1924) (Barney Google's horse, Spark Plug). In order to establish a claim for copyright infringement for a protected work, a plaintiff must show both ownership of a valid copyright and that defendant copied the protected work without authorization. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 701 (2d Cir.1992); *Rogers v. Koons,* 960 F.2d at 306; *Weissmann v. Freeman,* 868 F.2d 1313, 1320 (2d Cir.), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989); *Hasbro Bradley, Inc. v.* *Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985).

## A. OWNERSHIP OF VALID COPYRIGHT

■ UFS has submitted Certificates of Registration from the Registrar of Copyrights which cover the "Odie" comic strip character. *See* Parker Affidavit, at Exhibit D. In addition, UFS also possesses the Certificate of Registration for three-dimensional representations of "Odie" with respect to "plush toys" or "soft sculptures." *Id.* Pursuant to the Copyright Act, 17 U.S.C. § 410(c), a certificate of registration is *prima facie* evidence of the valid ownership of a copyright and the burden then shifts to the defendant to rebut that presumption of ownership. *See Rogers,* 960 F.2d at 306; *Hasbro Bradley, Inc.,* 780 F.2d at 192; *Eckes v. Card Prices Update,* 736 F.2d 859, 861 (2d Cir. 1984). Defendant Koons has offered no proof to rebut the presumption of ownership created by UFS's possession of certificates of registration covering the "Odie" character. Thus, UFS has established that it is the owner of the valid copyrights to the "Odie" character and there no issues of material fact to be resolved on that issue.

## B. UNAUTHORIZED COPYING BY KOONS

■ To prevail on the summary judgment motion, plaintiff UFS must also demonstrate that no issues of fact exist as to the issue of Koons' unauthorized copying. It is well-established that "[t]he plaintiff may prove defendant's copying either by direct evidence or, as is most often the case, by showing that (1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Computer Assocs. Int'l, Inc.,* 982 F.2d at 701; *see also Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986).

In the instant case, defendant Koons' unauthorized copying of the "Odie" character is so obvious that no reasonable factfinder could conclude otherwise. First, the Court finds that there is uncontroverted direct evi-

dence of copying. In his deposition, Koons admits that the original design for "Wild Boy and Puppy" came from a color picture of "Odie" that he obtained from an accessible media source, such as a postcard or magazine, and combined with a picture of a stuffed doll. Koons Deposition, at 63–64, 66–67, 91–94.[3] Koons instructed the artisan that the sculpture should be made "as close as possible" to the pictures in the collage, which included the "Odie" character. *Id.* at 93–94. Koons explained that, when he provided the artisan with a picture, he wanted him to treat the picture as "factual" and reproduce that picture as closely as possible so that Koons could maintain control of the final product. *Id.* Koons also admitted that he did not seek UFS's permission to use the "Odie" character in his sculpture. *Id.* at 52. Thus, the Court determines that this undisputed direct evidence of copying, by itself, is sufficient to support granting summary judgment in plaintiff's favor on the issue of unauthorized copying.

Even assuming *arguendo* that there was insufficient direct evidence of copying, summary judgment would be warranted based upon the fact that Koons' admittedly had access to the copyrighted work and that Koons' sculpture is substantially similar to the copyrighted work. The Second Circuit has held that substantial similarity is determined by " 'whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' " *Rogers*, 960 F.2d at 307 (quoting *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966)). The test also has been defined as "whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' " *Rogers*, 960 F.2d at 307–08 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960)).

In the instant case, the Court finds that even the most casual observer would recognize the "Puppy" in the "Wild Boy and Puppy" sculpture as the "Odie" character. The "Puppy" is virtually an exact reproduction of the "Odie" character. While Koons' changed the relative length of "Odie's" tongue in his sculpture, that alteration was such a minor component of the "Odie" character that it would be unnoticed by the casual observer and, in any event, would not alter the observer's ability to recognize the "Puppy" in the sculpture as being "Odie." Thus, no significance can be placed on this minor variation. The Court finds that no reasonable factfinder could view the "Puppy" in "Wild Boy and Puppy" and conclude that the "Puppy" is not the "Odie" character.

Koons contends that the "Wild Boy and Puppy" sculpture contains two other separate images, the boy and butterfly-bee, and that this grouping of images is a work of art that is a completely distinct and different work from the copyrighted "Odie" character. It is well established that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936); *see also Stewart v. Abend*, 495 U.S. 207, 238, 110 S.Ct. 1750, 1769, 109 L.Ed.2d 184 (1990) ("[A] taking may not be excused merely because it is insubstantial with respect to the *infringing* work.") (quoting *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565, 105 S.Ct. 2218, 2233, 85 L.Ed.2d 588 (1985); 3 Nimmer § 13.03[B], at 13–51 ("It is entirely immaterial that in many respects plaintiff's and defendant's works are dissimilar if in other respects similarity as to a substantial element of plaintiff's work can be shown."). Thus, "[i]f substantial similarity is found, the defendant will not be immunized from liability by reason of the addition in his work of different characters or additional and varied incidents, nor generally by reason of his work proving more attractive or saleable than the plaintiff's." 3 Nimmer § 13.03[B], at 13–51, 52.

While the Court recognizes that this general rule must be applied with caution in the context of graphic or three-dimensional

---

**3.** Similarly, in his affidavit, Koons concedes that the particular "Puppy" in the sculpture "happens to be "Odie.' " Koons Affidavit, at ¶ 19.

works as distinguished from literary works, *see Warner Bros. v. American Broadcasting Cos., supra*, 720 F.2d at 241–42, the Court finds that the grouping of the "Odie" character with two other images does not create a material issue of fact as to the question of substantial similarity. In *Warner Bros.*, the Second Circuit held that an issue of substantiality similarity exists when significant differences exist between the character in defendant's work and the copyrighted character:

> Ultimately, care must be taken to draw the elusive distinction between a substantially similar character that infringes a copyrighted character despite slight differences in appearance, behavior, or traits, and a somewhat similar though non-infringing character whose appearance, behavior, or traits, and especially their combination, significantly differ from those of a copyrighted character, even though the second character is reminiscent of the first one.

720 F.2d at 242. However, in the instant case, the Court is not faced with this "elusive distinction" because this is not a situation, as in *Warner Bros.*, where the defendant's character has significant dissimilarities to the copyrighted character. Instead, the "Puppy" in Koons' sculpture is a virtual reproduction of the "Odie" character in both its appearance and expression. The addition of the two other images does not, in any way, affect the ability of a lay observer to recognize the "Puppy" as "Odie." Under such circumstances, the use of two other images in the sculpture in conjunction with the wholesale pirating of the "Odie" character does not create a factual dispute which precludes summary judgment in favor of plaintiff on the issue of substantial similarity. In light of the overwhelming similarity of the "Puppy" in the "Wild Boy and Puppy" to the "Odie" character and the undisputed proof of Koons' access to the copyrighted material, a reasonable factfinder must conclude that Koons copied the protected features of the original character even if there were no evidence of direct copying.

## IV. FAIR USE

Defendant Koons argues that his use of the "Odie" character is protected by the fair use doctrine. This equitable doctrine, which is codified in Section 107 of the 1976 Copyright Act, allows others to use copyrighted material without the owner's consent, under certain circumstances, for purposes such as "criticism, comment, news reporting, teaching ... scholarship, or research." 17 U.S.C. § 107. Section 107 enumerates four factors which the Court should consider in assessing whether the use of a work in any particular case is a fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. This list is not intended to be exhaustive, but rather simply sets forth examples of the types of factors which the Court should consider in the application of the fair use doctrine. While the factual nature of this inquiry might suggest that summary judgment is inappropriate when fair use is the issue, it is well established that the general standard of summary judgment applies in such cases and, thus, the granting of summary judgment is proper when there are no genuine issues of fact present regarding the applicability of the fair use doctrine. *See, e.g., Stewart*, 495 U.S. at 236–38, 110 S.Ct. at 1768–69; *Rogers*, 960 F.2d at 308–09; *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1258–59 (2d Cir.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987). In other words, when the historical facts underlying the factors are not in dispute, summary judgment on the issue of fair use is appropriate:

> "the essential character of the fair use doctrine as an equitable rule of reason makes it all the more appropriate for the court itself to decide whether the fair use defense applies when the historical facts underlying each of the four factors are not disputed."

*Maxtone–Graham,* 803 F.2d at 1258 (quoting *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 606 F.Supp. 1526, 1532 (C.D.Cal.1985), *aff'd,* 796 F.2d 1148 (9th Cir.1986) (quotation and citation omitted)). In the instant case, while Koons has attempted to raise issues of fact to avoid summary judgment, the Court finds that the material historical facts are not in dispute. Instead, the real dispute focuses on the ultimate conclusions to be drawn from the admitted facts. As noted below, based upon an analysis of these facts, the Court finds that summary judgment in plaintiff's favor on the fair use issue is warranted.

## A. THE FAIR USE FACTORS

### (1) *Purpose and Character of the Unauthorized Use*

The first factor in the fair use analysis focuses on "whether the original was copied in good faith to benefit the public or primarily for the commercial interests of the infringer." *Rogers,* 960 F.2d at 309 (citing *MCA, Inc. v. Wilson,* 677 F.2d 180, 182 (2d Cir.1981)). A finding that the defendant knowingly exploited the copyrighted work for personal gain militates against a finding of fair use. *Rogers,* 960 F.2d at 309. The Supreme Court has noted that "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 562, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985). Therefore, when the unauthorized copies are made for a commercial or profit-making purpose, the use is presumptively unfair. *Stewart,* 495 U.S. at 237, 110 S.Ct. at 1768; *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 449, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984); *Rogers,* 960 F.2d at 309.

In the instant case, it is undisputed that two of the "Wild Boy and Puppy" sculptures were sold for $125,000 each and that, after subtracting the costs associated with producing such sculptures, Koons expected to make a profit. Koons Deposition, at 57, 85–87; *see also* Koons' Response to Plaintiff's Rule 3(g)

Statement, dated February 15, 1991, at ¶ 2. While Koons does not concede that profit is the motivation for his work, he admits that there are "business aspects" to his work and "the main objective ... in the business aspect of the endeavor would be to make a profit on it." Koons Deposition, at 23. There is also undisputed evidence that Koons advertised the 1988 Banality Show, which included the "Wild Boy and Puppy" sculpture, in at least four magazines. Koons Deposition, at 29–33.

The Court finds this undisputed evidence strongly indicates that Koons' use of the copyrighted "Odie" character was "of a commercial nature" and that Koons stands to profit from his exploitation of the copyrighted material without paying the customary price. The fact that the infringing copy can be classified as "art" or as being part of an "artistic tradition" cannot be used as a shield to salvage an otherwise defective fair use defense. The creation of musical compositions, films, plays, and literature can all be characterized as "art" or "artistic expression." If the subjective classification of an otherwise infringing work as "art" automatically immunized such work under the fair use doctrine, the doctrine would virtually eviscerate the protection afforded by the Copyright Act. Instead, the fair use analysis properly focuses, *inter alia,* on whether the work is "of a commercial nature" which looks primarily at whether the defendant stands to profit from the use of the copyrighted material without paying for such usage.

In *Rogers v. Koons, supra,* the Second Circuit noted that, with respect to the "String of Puppies" sculpture at issue in that case, "there is simply nothing in the record to support a view that Koons produced 'String of Puppies' for anything other than sale as high-priced art." *Rogers,* 960 F.2d at 312. The Court has examined the record in the instant case and reaches the same conclusion with respect to "Wild Boy and Puppy." While such evidence militates against finding fair use, it is not a controlling factor. Instead, such evidence must be considered in

conjunction with the remaining statutory factors. *Id.*, 960 F.2d at 309.[4]

### (2) *Nature of the Copyrighted Work*

The second fair use factor requires an analysis of the nature of the copyrighted work. As the Supreme Court has noted, "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row,* 471 U.S. at 563, 105 S.Ct. at 2232. Thus, fair use is less likely to be found when the original copyrighted work is fictional, rather than a factual or informational work such as a biography, a telephone directory, a textbook, or a "how to" book. *See Stewart,* 495 U.S. at 237–38, 110 S.Ct. at 1768–69; *Harper & Row,* 471 U.S. at 563, 105 S.Ct. at 2232. In making this assessment, other factors such as "[w]hether the original is creative, imaginative, or represents an investment of time in anticipation of a financial return also should be considered." *Rogers,* 960 F.2d at 310. In the instant case, it is undisputed that "Odie" is a fictional character created by James R. Davis as part of the Garfield comic strip, in anticipation of financial return. Moreover, "Odie" clearly must be classified as a creative and imaginative character and, thus, the second factor weighs heavily in plaintiff's favor.

■ While recognizing that the "Odie" character falls within the realm of the "creative," Koons argues that, as a result of the commercial success of the Garfield characters (including "Odie") and their pervasive presence in our society, these characters, to a certain extent, have become "public figures."

*See* Koons' Memorandum of Law in Opposition to the Motion for Partial Summary Judgment ("Koons' Opposition Memorandum"), at 21–22. In other words, the contention is that, due to plaintiff's placement of the Garfield characters in the public eye, these characters have "a factual existence as such" which entitles them to less protection under the copyright laws. *Id.* at 22. The Court finds that this argument is without merit and fails to create a material issue of fact with respect to the second factor under the fair use doctrine. The popularity and commercial success of the Garfield characters cannot transform them into the "factual" realm any more than Mickey Mouse, Snoopy, Superman, or Bart Simpson could be said to have acquired a "factual existence" which results in a loss of their copyright protection. In other words, unlike a trade name that loses its protection under the Lanham Act when it becomes generic, these imaginative characters do not lose copyright protection as a result of their incorporation into American culture. *See Warner Bros.,* 720 F.2d at 242. No matter how popular a character may become, the copyright owner is entitled to guard against the unauthorized commercial exploitation of that character. *Id.*[5] To hold otherwise would thwart a fundamental purpose of the Copyright Act which is to foster creativity by assuring the creator of an original work that he or she will reap the exclusive benefits generated from the commercial success of the work.

---

4. Koons argues that, unlike in *Rogers,* there is no evidence of bad faith in Koons' use of the plaintiff's work and, thus, summary judgment is inappropriate on this first factor. In *Rogers,* the Court found that Koons had torn the copyright mark off of the plaintiff's copyrighted notecard prior to sending it to the Italian artisans and, thus, exhibited bad faith. 960 F.2d at 309. While the copyright notice appears to have also been missing from the cut-out of the "Odie" character used as a basis for "Wild Boy and Puppy" in the instant case, Koons argues that there is no evidence that he tore off the copyright notice and, thus, there is a factual dispute on the bad faith issue which precludes summary judgment. The Court finds this argument to be without merit. The finding of bad faith in *Rogers* was simply one of many factors considered by the Court and was not a prerequisite to the summary judgment determination. Assuming *arguendo*

that in the instant case Koons did not tear off the copyright notice and did not intend to hide such notice from others, the Court finds that, based upon all of the other factors, summary judgment in plaintiff's favor is appropriate. Thus, even if this factual dispute on this particular issue was resolved in defendant's favor, it would not affect the outcome. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

5. The Court recognizes that such characters, like other types of copyrighted works, can be the subject of a parody which is protected by the fair use doctrine. However, as noted *infra,* Koons' use of "Odie" does not fall within the parody branch of the fair use doctrine.

Accordingly, since the "Odie" character is a fictional, imaginative work, the second factor strongly militates against finding the Koons' use of that character in his sculpture constituted a fair use. Moreover, the Court finds that Koons' has failed to raise any genuine issues of material fact with respect to this second factor.

### (3) *The Amount and Substantiality of the Unauthorized Use*

In *Rogers v. Koons, supra,* the Second Circuit noted that "[w]here the amount of copying exceeds permissible levels, summary judgment has been upheld" in favor of plaintiff on the fair use issue. 960 F.2d at 310–11. To a large extent, this third factor "involves the same analysis as that used when determining if the copy is substantially similar to the original." 960 F.2d at 311. At issue is "the amount and substantiality of the portion used in relation to the copyrighted work, not to the allegedly infringing work." *New Era Publications Int'l, ApS v. Carol Publishing Group,* 904 F.2d 152, 158 (2d Cir.1990), *cert. denied,* 498 U.S. 921, 111 S.Ct. 297, 112 L.Ed.2d 251 (1990). In assessing this factor, " '[t]here are no absolute rules as to how much of a copyrighted work may be copied and still be considered a fair use.' " *Id.* (quoting *Maxtone–Graham,* 803 F.2d at 1263). While this determination has a quantitative element, the Second Circuit has emphasized that "[e]ven more critical than the quantity is the qualitative degree of the copying: what degree of the essence of the original is copied in relation to its whole." *Rogers,* 960 F.2d at 311.

Applying this factor in the instant case, the undisputed facts clearly demonstrate that the "Wild Boy and Puppy" sculpture, designed by Koons, copies the "Odie" character virtually in its entirety. Under the circumstances of the instant case, no reasonable factfinder could conclude that Koons' use of the copyrightable components of the "Odie" character did not exceed a permissible level of copying under the fair use doctrine. *See, e.g., Rogers,* 960 F.2d at 311 (where Koons' sculpture

copied "nearly *in toto* " the essence of plaintiff Rogers' "Puppies" photograph, "no reasonable jury could conclude that Koons did not exceed a permissible level of copying under the fair use doctrine").

### (4) *Effect of the Use on the Market Value of the Original*

■ The fourth factor, which examines the effect of the defendant's use on the market value of the original work, "is the 'most important, and indeed, central fair use factor.' " *Stewart,* 495 U.S. at 238, 110 S.Ct. at 1769 (quoting 3 Nimmer § 13.05[A], at 13–81); *see also Harper & Row,* 471 U.S. at 566, 105 S.Ct. at 2233. Under this factor, the less adverse the impact on the copyright owner's potential market, the less public benefit need be shown to sustain a non-commercial fair use. *Rogers,* 960 F.2d at 312. However, where the use of the copyrighted work is commercial in nature, future harm to the potential markets for the copyright owner's work is presumed. *Sony Corp. of America,* 464 U.S. at 451, 104 S.Ct. at 793; *Rogers,* 960 F.2d at 312. Thus, as recognized in *Rogers,* a critical inquiry under this factor is whether Koons planned to profit from the exploitation of the "Odie" character without paying UFS for such use. *Id.* The Court has already found, based upon the undisputed historical facts, that the use of the "Odie" character in the "Wild Boy and Puppy" sculpture was primarily commercial in nature and that Koons intended to profit from the sale of as many as three copies of the sculpture. Under such circumstances, harm to UFS's ability to market the "Odie" character is presumed and the fourth factor strongly favors finding no fair use.

■ Koons argues that his representation to the public that there would only be three editions of the sculpture made, as well as one "artist's proof," is ethically and legally binding.[6] Thus, Koons contends that, since he is prohibited from producing any more than the three copies plus the one "artist's

6. The Court notes that this legal and ethical obligation, at best, prevents Koons from producing any more editions of the "Wild Boy and Puppy" sculpture, and would not prevent him

from continued commercial exploitation of the "Odie" character and other Garfield characters in new sculptures or the licensing of the "Wild Boy and Puppy" sculpture for derivative uses.

proof" of "Wild Boys and Puppy" which are already in existence, this limited edition work does not harm UFS's ability to market the "Odie" character. However, UFS need not show actual harm. Instead, the Second Circuit has held that "the owner of a copyright with respect to this market-factor need only demonstrate that if the unauthorized use becomes 'widespread' it would prejudice his potential markets for his work." *Rogers*, 960 F.2d at 312. Applying this principle in *Rogers*, the Court found likelihood of future harm to the marketing of Rogers' photograph even though the "String of Puppies" sculpture, like the sculpture in the instant case, was limited to an edition of three copies. *Id.* Moreover, the variations in the medium in which the copy is made does not, in any way, diminish the copyright owner's ability to protect potential markets. Thus, in assessing this fourth factor, "courts do not focus solely on the market for the work itself, but also on the 'harm to the market for derivative works.'" *New Era Publications,* 904 F.2d at 159 (quoting *Harper & Row,* 471 U.S. at 568, 105 S.Ct. at 2234).

Even in the absence of the presumption of harm which arises from the commercial nature of Koons' sculpture, there is no question that if the unauthorized use of the "Odie" character in sculptures became widespread it would prejudice UFS's potential market with respect to sculptures, as well as other three-dimensional representations of "Odie." UFS currently has approximately 400 licenses for products or uses of various "Garfield" characters, including "Odie." It is clear that UFS's rights in the "Odie" character would allow it to license the manufacture of porcelain statutes of "Odie" or other three-dimensional representations of that character. The widespread sale of unauthorized sculptures of "Odie," such as in "Wild Boy and Puppy," would obviously have an adverse impact on the potential market for such products.

Similarly, the Court notes that the existence of even three of these sculptures would prejudice UFS's ability to exploit this potential market. For example, the creator of the "Garfield" comic strip, James Davis, is an accomplished artist and may, at some point, decide to create artistic sculptures of his characters for commercial sale. The existence of Koons' work would certainly have a negative impact on the ability to market such a work. Moreover, to the extent that UFS would sell the rights to produce such sculptures to another artist, the market for such sculptures has been reduced by the unauthorized use of the "Odie" character.

Finally, Koons' "Wild Boy and Puppy" sculptures also have the ability to affect other markets of the "Odie" character well beyond the realm of sculptures, statues, or other three-dimensional representations of the character. As commonly done by artists when a work is particularly successful, Koons could decide to license the use of "Wild Boy and Puppy" in posters, cards, T-shirts, calendars and other derivative works. Thus, there is the potential that Koons' use of the "Odie" character would impact licenses granted by UFS in these markets to the extent such licenses already exist or, at the very least, would affect UFS's ability to exploit these markets in the future.

In sum, given the commercial nature of Koons' sculpture, future harm to the market value of the copyright in "Odie" is presumed. Even in the absence of this presumption, the circumstances clearly indicate Koons' use of the copyrighted character has prejudiced UFS's ability to exploit potential markets for its character. Defendant Koons has failed to raise any material issues of fact which would allow a reasonable factfinder to find in his favor with respect to this fourth factor.

## B. PARODY OR SATIRE

■ It is well recognized that there is a branch of the fair use doctrine which deals specifically with the use of a copyrighted work for purpose of parody or satire. In *Rogers v. Koons, supra,* the Second Circuit defined parody or satire and explained the underlying rationale for its incorporation into the fair use doctrine under the general theme of "comment or criticism" of a copyrighted work:

Parody or satire, as we understand it, is when one artist, for comic effect or social commentary, closely imitates the style of another artist and in so doing creates a new art work that makes ridiculous the

style and expression of the original. Under our cases parody and satire are valued forms of criticism, encouraged because this sort of criticism itself fosters the creativity protected by the copyright law.

*Rogers,* 960 F.2d at 309; *see also Warner Bros.,* 720 F.2d at 242–43. Thus, if a defendant's work is determined to be a parody of the copyrighted work, the defendant is entitled to "more . extensive use of the copied work than is ordinarily allowed under the substantial similarity test." *Rogers,* 960 F.2d at 310.

Koons argues that the "Odie" character is being used as a parody to symbolize the cynical and empty nature of society. In his affidavit, Koons explains the meaning behind the "Wild Boy and Puppy" work of art is that the Puppy is making a cynical, gagging gesture toward the Wild Boy and such a gesture shows that the Puppy "has lost the ability to find beauty in the most simple things; he cannot embrace the love of life." Koons Affidavit, at ¶ 15. Koons is trying to convey to the viewer that the Puppy's ridicule and cynicism towards the Wild Boy reveals the Puppy's banality. Thus, Koons is exposing the emptiness of the Puppy's scorn and, in so doing, praising the Boy for his sense of freedom. *Id.* at ¶ 16. Koons is using the Puppy as an object of modern mass culture to emphasize that modern culture has become dangerously empty and cynical. *See* Reply Memorandum of Law in Opposition to the Motion by Plaintiff for Partial Summary Judgment, at 15.

In *Rogers,* Koons made virtually the identical argument with respect to his "String of Puppies" sculpture which copied the "Puppies" photograph. Koons contended in *Rogers* that his sculpture was a satire or parody of society at large which showed that mass production of commodities and images had led to a deterioration of the quality of society. *Rogers,* 960 F.2d at 309. In affirming the granting of summary judgment in plaintiff's favor, the Second Circuit emphatically rejected that argument and held that "though the satire need not be only of the copied work and may, as appellants urge of 'String of Puppies,' also be a parody of modern society, the copied work must be, at least

in part, an object of the parody, otherwise there would be no need to conjure up the original work." *Rogers,* 960 F.2d at 310. Applying this rule, the Second Circuit found that "even given that 'String of Puppies' is a satirical critique of our materialistic society, it is difficult to discern any parody of the photograph 'Puppies' itself." *Id.* Thus, the Court found, as a matter of summary judgment, that Koons' "String of Puppies" did not constitute a parody of the original work under the fair use doctrine. In reaching this decision, the Second Circuit articulated the policies which support the rule that the copied work must, at least in part, be an object of the parody:

> We think this is a necessary rule, as were it otherwise there would be no real limitation on the copier's use of another's copyrighted work to make a statement on some aspect of society at large. If an infringement of copyrightable expression could be justified as fair use solely on the basis of the infringer's claim to a higher or different artistic use—without insuring public awareness of the original work—there would be no practicable boundary to the fair use defense. Koons' claim that his infringement of Rogers' work is fair use solely because he is acting within an artistic tradition of commenting upon the commonplace thus cannot be accepted. The rule's function is to insure that credit is given where credit is due. By requiring that the copied work be an object of the parody, we merely insist that the audience be aware that underlying the parody there is an original and separate expression, attributable to a different artist.

*Rogers,* 960 F.2d at 310; *see also MCA, Inc.,* 677 F.2d at 185 ("We are not prepared to hold that a commercial composer can plagiarize a competitor's copyrighted song, substitute dirty lyrics of his own, perform it for commercial gain, and then escape liability by calling the end result a parody or satire on the mores of society. Such a holding would be an open-ended invitation to musical plagiarism.").

In the instant case, the "Wild Boy and Puppy" sculpture cannot qualify as a parody or satire because, as in *Rogers,* the sculpture

is, at best, a parody of society at large, rather than a parody of the copyrighted "Odie" character. In the wake of the *Rogers* decision, Koons attempts to argue that the sculpture is, indeed, a parody of the "Odie" figure itself and that there are factual disputes with respect to this issue which preclude summary judgment. This position is in complete contradiction to the undisputed evidence in the case. In fact, Koons concedes this point in his initial memorandum of law in opposition to UFS's motion, prior to the Second Circuit's decision in *Rogers:*

> Defendants recognize that the *Wild Boy and Puppy* sculpture was not intended to be a parody or a satire of the comic strip character "Odie". Indeed Koons has testified that he was not even aware of the identity of the Puppy when he chose it as a source for his sculpture (although he was using it in a satirical fashion). It is the use of the comic strip character as a social comment in the sculpture that brings the Koons use within the same line of reasoning or approach as the parody cases.

Koons' Opposition Memorandum, at 32–33; *see also* Koons Affidavit, at ¶ 19 ("I never had the slightest intention (or even knowledge) that I was including a special dog named 'Odie'. If I had thought there would be a strong public reaction to the Puppy as 'Odie' I would not have selected it for the piece."); Koons Deposition, at 63 ("I found the image of the puppy, which I had no idea was Odie—I didn't even find out it was Odie by name until I exhibited the piece...."). Thus, Koons has admitted that the sculpture is not a parody of the "Odie" character. In addition, Koons also conceded that he could have used other images or figures to make the same point. *See* Koons Deposition, at 63–64. Given that Koons admits that other images or figures could have been used in the sculpture besides "Odie," it becomes even more obvious that the sculpture cannot be a comment, criticism, or parody directed, in any way, at "Odie" and there is no justification for the parody defense under such circumstances. Accordingly, since "Odie" is not an object of the parody but merely is claimed to be "an animal figure" that is part of a more general parody on the banality of life or criticism of the mass media culture at large,

the teachings of *Rogers* requires that Koons' parody argument be rejected as a matter of law.

In any event, even if Koons' use of the "Odie" character could be classified as a parody, his claim of fair use still would fail. The classification of a work as a parody does not automatically immunize such work from an infringement claim, but rather the parody must be examined in light of the statutory factors. *See, e.g., Fisher v. Dees,* 794 F.2d 432, 435 (9th Cir.1986) (parody is not presumptively classified as a fair use, but rather "must be considered individually, in light of the statutory factors, reason, experience, and, of course, the general principles developed in past cases"); *see also New Line Cinema Corp. v. Bertlesman Music Group, Inc.,* 693 F.Supp. 1517, 1525 (S.D.N.Y.1988). Thus, while parodists are provided significant leeway with respect to the extent and nature of their copying, there are limitations on how much of the original work the parodists can use. *Rogers,* 960 F.2d at 311; *MCA, Inc.,* 677 F.2d at 184–85. When a parody is directed at the copyrighted work being used, the parody falls within the scope of fair use only if the unauthorized user takes no more of the copyrighted work than is necessary for purposes of the parody. In the instant case, Koons appropriated virtually the entire "Odie" character which certainly was much more than would have been necessary if "Wild Boy and Puppy" had been a parody of "Odie." Therefore, assuming *arguendo* that Koons' sculptures could be viewed as a parody of "Odie," the fair use defense would still be unavailable because the use was "so substantial as to be unfairly excessive." *MCA, Inc.,* 677 F.2d at 185.

Considering all of the aforementioned fair use factors, the Court finds that summary judgment in plaintiff's favor on the issue of liability is warranted. The record clearly indicates that Koons intentionally copied the "Odie" character, virtually *in toto,* in his "Wild Boy and Puppy" sculpture and two editions of that sculpture were sold at $125,000 each. Koons stands to profit from his commercial exploitation of the "Odie" character without paying the customary price for such use and, at the same time, has harmed

potential markets for the "Odie" character. Moreover, based upon the record in this case, no reasonable factfinder could conclude that Koons' sculpture constitutes a parody of the "Odie" character. All of the fair use factors strongly militate against a finding of fair use and defendant has failed to raise any material issues of fact which would preclude a summary judgment determination in plaintiff's favor.[7] In sum, drawing all reasonable inferences in defendant's favor, there is no evidence which would allow a reasonable factfinder to rule for the defendant on the issue of copyright liability in the instant case.

## CONCLUSION

For the reasons stated above, the Court hereby grants plaintiff's motion for partial summary judgment on the issue of copyright liability as to Counts Two and Three in the complaint. The parties shall appear for a pre-trial status conference on April 23, 1993, at 3:00 p.m., in Courtroom 318.

**SO ORDERED.**

7. Defendant Koons argues that the "artist's proof" of the "Wild Boy and Puppy" sculpture is not offered for sale and, therefore, must be considered separately. In addition, Koons argues that there are factual disputes regarding the legal treatment of the "artist's proof" which preclude summary judgment. The Court finds this argument unpersuasive. The dispute regarding the status of the "artist's proof" relates to the issue of damages and, in no way, impacts on this Court's summary judgment determination on the issue of liability. *See Rogers*, 960 F.2d at 313.