Frederick E. **BOUCHAT**, Plaintiff,

v.

**BALTIMORE RAVENS, INC.,**
et al., Defendants.

No. 97–CV–1470.

United States District Court,
D. Maryland.

Jan. 31, 2002.

Decision supplementing corrected
memorandum and order
Feb. 1, 2002.

612

*CORRECTED [1] MEMORANDUM AND ORDER OF OCTOBER 5, 2001*

GARBIS, District Judge.

The Court has before it Defendants' Mo-

1. This document clarifies, and corrects typographical errors contained in, the Memoran-

dum and Order issued October 5, 2001. There is no substantive change made herein.

tion for Partial Summary Judgment and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

## I. BACKGROUND [2]

In 1995, Plaintiff Frederick E. Bouchat ("Bouchat") was employed as a security guard at a State Office building. He enjoyed drawing pictures inspired by comic book characters, in particular Batman. On November 6, 1995, there was a public announcement that the Cleveland Browns would be moving to Baltimore within a short time, developing local (Baltimore) interest in a new name for the team. Bouchat became interested in the new football team and began drawing designs for the team using various names, including the name "Ravens." On or about December 5, 1995, Bouchat created what shall be referred to as the "Shield Drawing."

In March of 1996, the Baltimore team adopted the name "Ravens." On April 1st or 2nd of 1996, Bouchat sent to the Maryland Stadium Authority a fax of the Shield Drawing [3] with a note written thereon asking the Chairman of the Authority to send the sketch to Mr. Modell (President of the Ravens). Bouchat further wrote in the note "If he would like this design if he does use it I would like a letter of recognition and if the team wants to I would like a adiograph (*sic*) helmet."

There is no evidence that anyone connected with the Defendants intentionally

---

2. For a more complete discussion of the underlying facts, see the Court's Memorandum and Order of February 19, 1999 and the decision on interlocutory appeal, *Bouchat v. Balti-* *more Ravens, Inc.*, 241 F.3d 350 (4th Cir. 2001).

3. Plaintiff claims to have sent two other drawings along with the Shield Drawing.

caused Plaintiff's drawing to be considered by the designers engaged by NFL Properties to design the Ravens' logo. Nevertheless, presumably due to a misunderstanding as to its origination, Plaintiff's drawing was used by the graphic artists engaged by NFL Properties in their production of the "Flying B logo."

The Defendants, with no knowledge that the designers had infringed anyone's work and assuming that they were dealing with an original work owned by NFL Properties, used the Flying B logo as the primary Ravens' identifying symbol. The Flying B logo was used in every aspect of the Ravens' activities including, but not limited to, player's uniforms, stationery, tickets, banners, on-field insignia and on merchandise offered for sale. The Flying B logo was included in the portfolio of NFL team logos licensed for use by merchandisers.

Plaintiff filed this lawsuit alleging infringement of his copyright on the Shield Drawing as well as several other drawings. The Court bifurcated the case and first tried liability issues. On November 3, 1998, the jury found that Plaintiff had proven infringement of the Shield Drawing, but not the other drawings. In August of 1999, the Court certified the case for interlocutory appeal. On October 3, 2000, the Fourth Circuit affirmed the finding of liability. *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350 (4th Cir.2001). The case is now before the Court for trial of damages issues. By the instant motion, Defendants seek summary judgment with regard to certain of Plaintiff's damages claims.

## II. *DISCUSSION*

### A. *Partial Summary Judgment is Appropriate*

Under the federal copyright statute, an infringer is liable for either:

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

17 U.S.C. § 504(a).

A prevailing copyright plaintiff may elect, at any time prior to the entry of final judgment, to recover statutory damages in lieu of actual damages and profits. 17 U.S.C. § 504(c)(1). In this case, with one infringed work, statutory damages would be no more than $30,000 [4] and could be as little as $200.00 or $750.00. 17 U.S.C. § 504(c)(1),(2).

---

**4.** There is no claim of willful infringement which, if proven, would increase maximum statutory damages to $100,000.

Bouchat, apparently making no claim for actual damages, seeks to recover the "profits of the infringer[s]" pursuant to 17 U.S.C. § 504(b). That statute provides, in pertinent part:

(b) Actual Damages and Profits.—The copyright owner is entitled to recover ... any profits of the infringer that are attributable to the infringement .... In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

■ To meet his initial damage burden of proof, Bouchat has presented evidence of the gross receipts from all activities of Defendants National Football League Properties, Inc. and Baltimore Ravens, Inc. Under the statutory scheme, the burden shifts to the Defendants to prove "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* The Defendants assert that certain categories of their gross receipts include no revenues "attributable to the infringement" and seek summary judgment as to Plaintiff's claim with respect to those categories of receipts. Defendants' position is consistent with appellate decisions recognizing that the statutory language "infringer's gross revenues" must be interpreted to mean gross revenues which are related to the infringement so as possibly to include receipts "attributable to the infringement."

As stated in *Taylor v. Meirick*, in which the defendant copied and sold 3 of plaintiff's copyrighted maps as well as other merchandise:

all [the burden shifting language of § 504(b)] means is that [the plaintiff] could have made out a prima facie case for an award of infringer's profits by showing [the defendant's] gross reve-

nues from the sale of the infringing maps. It was not enough to show [the defendant's] gross revenues from the sale of everything he sold....

712 F.2d 1112, 1122 (7th Cir.1983).

Moreover, even to the extent that a Plaintiff can shift the burden of proof by showing gross receipts from activities *related to* the infringement, a Defendant may still be entitled to summary judgment. In such a case, the Defendant, under generally applicable summary judgment principles, can be granted summary judgment to the extent that there is no genuine issue of material fact with respect to particular expenses or elements of profit attributable to factors other than the copyrighted work.

Defendants recognize that receipts relating to the Defendants' sale of merchandise bearing the Flying B logo and royalties obtained from licensees who sold such merchandise could include some revenues attributable to the infringement. Accordingly, the Defendants acknowledge that there are genuine issues of material fact as to "the deductible expenses and the elements of profit attributable to factors other than the copyrighted work" with regard to millions, and perhaps tens or hundreds of millions, of dollars of their gross receipt. Defendants contend, however, that their other sources of revenue could not reasonably be found to have been attributable to any degree at all by the use of the Flying B logo. The Defendants place their other sources of revenue in the following categories:

1. Sponsorships.
2. Broadcast and other media licenses.
3. Ticket sales.
4. General business revenues.

Bouchat, as can best be determined from the papers and arguments of counsel, contends that virtually every category of

Defendants' gross receipts would include revenues attributable to the infringement because of the Defendants' widespread use of the "Flying B" as the primary logo for the Baltimore Ravens. Counsel's rationale seems to be that the *use* of the logo in regard to an activity means that the revenues derived from that activity would be, in part, attributable to the infringement. Hence, he argues that revenues obtained from such sources as ticket sales, parking at games, and food sales at games are, in part, attributable to the use of the Flying B logo.

Plaintiff's counsel concedes that there are some categories of revenues that could not, in any part, be attributable to the infringement. Thus, he acknowledges that the use of the Flying B logo by other teams (on their game tickets, for example), the interest earned on Ravens' checking accounts, and the revenues obtained from stadium rental would not, in any part, be attributable to the infringement even though the Flying B was presented on Ravens' checks and prominently featured on the playing field. Tr. pg.23 ln.8,—pg.24 ln.11, pg.27 ln.12—pg.28, ln.8.

Accordingly, even Plaintiff's counsel acknowledges, as he must, that there are some categories of Defendants' gross receipts which generate no profits attributable to the infringement. The question thus presented is not whether the Defendants are entitled to partial summary judgment as to a portion of their gross receipts. Rather, the issue is the extent to which partial summary judgment is appropriate.

## B. *The Extent of Partial Summary Judgment*

In the context of copyright infringement litigation, the instant case presents an unusual and, to an extent unique, situation. In most, if not all, of the reported cases, the copyrighted work has an intrinsic value which the infringer uses to generate profits. For example, the script of a play which is used in a motion picture [5], the use of a copyrighted representation of a product in an advertisement indicating that the product (or equivalent) would be available from the infringer [6], the use of part of a copyrighted work in advertisements indicating that the infringer was selling a new edition of the copyrighted work [7], the inclusion of a copyrighted photograph in a magazine published by an infringer [8], etc.

In such a case, it is appropriate to view the infringer as taking or using value inherent in the infringed work itself. In the instant case, the copyrighted work—a picture of a shield with wings and a stylized letter "B"—had no material value [9] unless and until the Defendants used the picture as the Ravens logo. At that point, and solely due to the efforts of the Defendants and the use of the name "Ravens" (owned by the Defendants), the good will of the Baltimore Ravens football team became associated with the Flying B logo, thus giving it commercial value.

In the instant case, the use of the Flying B logo by the Baltimore Ravens on its printed material, uniforms, banners, etc. gave commercial value to the logo so that it could be used in conjunction with the

**5.** *Sheldon v. Metro–Goldwyn Pictures Corp.,* 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940).

**6.** *On Davis v. The Gap, Inc.,* 246 F.3d 152 (2nd Cir.2001).

**7.** *Konor Enters., Inc. v. Eagle Pub'ns, Inc.,* 878 F.2d 138 (4th Cir.1989).

**8.** *Walker v. Forbes, Inc.,* 28 F.3d 409 (4th Cir.1994).

**9.** Other than such aesthetic value one might find in the Shield Drawing *sans* the name "Ravens."

name of the Baltimore Ravens and the team's goodwill to generate profits. Any profits attributable to the infringement, *i.e.* attributable to the Defendants' use of the Shield Drawing to create the Flying B logo, would necessarily have to result from revenue generated *because of* the use of the Flying B logo. Revenues that were derived without regard to whether the Flying B logo was used could not be considered "attributable to" the logo. After all, in making an award for profits attributable to the infringement, one is not charging the infringer for the mere *use* of the copyrighted work but, rather, is ascertaining what profits *were attributable to* the infringement.

The Defendants acknowledge that there are genuine issues of material fact as to "the profits attributable to the infringement" in regard to revenues obtained by virtue of the sale of merchandise bearing the Flying B logo. Thus, as an illustration, consider the revenue derived from licensing a hypothetical T-shirt manufacturer who paid a total of $1,000,000 of royalties for the use of NFL logos on its merchandise in the relevant period. The following factual questions, and perhaps others, would have to be resolved:

1. What portion of the $1,000,000 in total royalties was paid for merchandise bearing a Ravens' logo?

2. Of such Ravens' logo bearing merchandise, what portion bore the Flying B logo?

3. Of the royalty paid with regard to merchandise bearing the Flying B logo, what portion of the royalties paid is attributable to factors other than Bouchat's copyright work? [10]

4. What expenses are deducted to obtain the profit derived?

In sum, while the net result may be a small fraction of the pertinent gross receipts, a reasonable jury could find there to be some profit attributable to the infringement in regard to the sale (by Defendants or licensees) of merchandise bearing the Flying B logo. The rationale is that the amount of revenue could have been affected by the use of the Flying B logo. Indeed, a customer selected the particular tee-shirt bearing the Flying B logo and could have been influenced in part by the use of Bouchat's copyrighted drawing.

 In sharp contrast, there appears to be no other categories or types of income earned by the Defendants (with the possible exception of sponsorship revenues not now being considered) that could reasonably be considered attributable to the infringement. There has been no sensible argument presented, much less evidence, that could support a conclusion that any other source of revenue could have been affected by the use of the Flying B logo. It is inconceivable that any one would buy game tickets, purchase food or drink [11], use stadium parking, pay to broadcast a televised game, etc., because of the use of the Flying B logo as distinct from merely using the name of the team.

The guiding principle in distinguishing between potentially attributable, and definitely not attributable, types of income can be succinctly stated in the context of the instant case as follows:

If the use of the Flying B logo to designate the Ravens could not reasonably be found to have affected the amount of

---

10. For example, other features such as the use of the names "Ravens," "National Football League" as well as logos and trademarks owned by Defendants, etc. *See Rogers v. Koons,* 960 F.2d 301 (2nd Cir.1992).

11. Of course, revenues from the sale of specialty cups or other items bearing the Flying B logo could, possibly, have been affected by the infringement.

revenue obtained from an activity, the revenue from that activity could not reasonably be found attributable to the infringement.

In *Walker v. Forbes,* 28 F.3d 409 (4th Cir.1994), the Defendant magazine publisher included, in a 408 page issue, a photograph which infringed the Plaintiff's copyright. The Fourth Circuit affirmed the district court's admitting evidence to establish that advertisers committed their revenues prior to seeing the magazine as published and, therefore, could not have been affected in their decision to advertise by the use of the infringing photograph. In *Walker v. Forbes,* the question presented was the admissibility of evidence and not entitlement to summary judgment. Nevertheless, the appellate court recognized an essential principle. That is, unless there is some reasonable possibility that revenue could be affected by an infringement, the revenues (and profits inherent therein) could not be attributable to an infringement. Accordingly, the Fourth Circuit recognized a distinction between subscription sales that could not have been affected by the use of the infringing photograph and newsstand sales. As to the latter, it was at least possible that some customers would peruse the contents of the magazine before purchase and could have been affected by the inclusion of the infringing photograph.

In *Konor Enters., Inc. v. Eagle Pub'ns, Inc.,* 878 F.2d 138 (4th Cir.1989), the Plaintiff published a telephone directory. The Defendant started to publish a competing directory representing to advertisers that it was publishing the "third" or "next" edition of Plaintiff's directory. The Defendant used copies of Plaintiff's copyrighted advertisements as samples for prospective advertisers. The appellate court reversed the district court's award of only nominal damages and remanded the case for trial. The appellate court recognized, as justified

by the evidence, that Defendant's revenues could have been affected by the infringement. Hence, it was necessary to have a factual determination as to the extent to which revenues, and their profits, were attributable to the infringement. Nevertheless, *Konor* does not prohibit summary judgment in a situation in which there was an infringing use even though no reasonable fact finder could find that any revenues (or profits) were attributable to the infringement.

In *On Davis v. The Gap, Inc.,* 246 F.3d 152 (2nd Cir.2001), the Plaintiff owned a copyright in certain "nonfunctional jewelry worn over the eyes in the manner of eyeglasses." *Id.* at 156. The Defendant published an advertisement for the Gap, one of its chains of retail stores, showing a photograph including an individual wearing Plaintiff's copyrighted eyewear. The district court granted summary judgment on Plaintiff's claim for infringer profits due to the failure of Plaintiff to establish a causal connection between the infringement and the Defendant's profits. The Second Circuit reversed, but, in so doing, recognized the principles that guide this Court in its decision. As stated therein:

> Because the ad infringed only with respect to Gap label stores and eyewear, we agree with the district court that it was incumbent on Davis to submit evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories. Had he done so, the burden would then have shifted to the defendant under the terms of § 504(b) to prove its deductible expenses and elements of profits from those revenues attributable to factors other than the copyrighted work.

It is true that a highly literal interpretation of the statute would favor Davis. It says that "the copyright owner is

required to present proof only of the infringer's gross revenue," 17 U.S.C. § 504(b), leaving it to the infringer to prove what portions of its revenue are not attributable to the infringement. Nonetheless we think the term "gross revenue" under the statute means gross revenue reasonably related to the infringement, not unrelated revenues.

*Id.* at 160.

In *On Davis*, as in cases cited therein, the Court held that:

the statutory term "infringer's gross revenue" should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement.

*Id.*

In the *On Davis* decision, the court held that the advertisement at issue could have affected revenues only with respect to Gap label stores and eyewear. Hence, even though the infringing advertisement was used by Gap, Inc., there could not have been profits attributable to the infringement beyond those of Gap label stores or, perhaps, only sales receipts for eyewear or accessories. By no means was the Second Circuit holding that use of an infringing photo in an advertisement necessarily means that some portion of any category of the users' profits can be attributable to the infringement. Rather, a trial court must determine if it is reasonably possible that certain types of revenues could have been affected by the infringement. If so, as to those types of revenues the burden shifts to the infringer to show what portion of the profits is due to elements other than the infringement.

There can, as illustrated by *On Davis*, be a category of revenues excluded from infringement analysis broadly defined as revenues from all operations other than a specific one, *e.g.*, Gap label stores but not other Gap operations. There can also, as illustrated by *On Davis*, be categories of

revenue excluded from infringement profit analysis less broadly defined, *e.g.*, all revenues other than those from eyewear sales. The bottom line is that the trial court must view the facts in the case before it and decide the extent to which the defendant's revenues can be said to be related to the infringement and the extent to which any reasonable fact finder could conclude that particular categories of revenue could include any receipts attributable to the infringement. To the extent the Court determines that categories of revenue cannot reasonably be found to be attributable to an infringement, a defendant can be granted summary judgment as to those categories.

■ In the case at Bar, the Court holds that except for revenues derived from the licensing of merchandise sales, and possibly sponsorships, there appears to be no category of revenues that could possibly be considered as attributable to the infringing use of the Shield Drawing in the creation of the Flying B logo. The Defendants shall be granted summary judgment as to all claims for profits from infringement except as to those profits derived from the licensing of merchandise, any sales of merchandise bearing the Flying B logo and, subject to later ruling, sponsorships.

## III. *THE AFFIDAVITS*

Plaintiff seeks to strike the affidavits submitted by the Defendants in support of their motion. Essentially, Plaintiff contends that the affidavits do not present admissible evidence based upon their personal knowledge. Plaintiff further contends that the affidavits were not disclosed in discovery proceedings.

■ The Court finds Plaintiff's sweeping objection to the use of the affidavits inappropriate. In the context of the instant case, Defendants did not have an obligation to disclose the identities of these

affiants in response to discovery requests prior to the filing of the instant motion for summary judgment.

■ As to the substance of the testimony, the Court will consider the affidavits as evidence only to the extent that the statements therein would be admissible at trial. The Court is not, at this time, deciding upon summary judgment as to sponsorships. Accordingly, the affidavits are not being relied upon at all with regard to that subject.

As to matters other than sponsorships, the affidavits are not particularly significant in the context of the instant motion. The Court is by no means relying upon any opinion of an affiant that no portion of certain categories of revenue or profits is attributable to the infringement of Plaintiff's work. Statements such as "[t]o my knowledge, no company entered into a business relationship with the Ravens Club because of the presence of the winged shield logo on the Raven's Club stationery," [David Modell Aff. ¶ 9]; "In my experience in broadcast television, I have never known the creative aspects of a team logo to factor into a broadcast company's decisions regarding the negotiations of a broadcast rights agreement with a league," [Sean McManus Aff. ¶ 4] are taken to be true statements of the knowledge of the affiants but not relied upon by the Court as a basis for its decision. It is not necessary to rely upon David Modell's affidavit to find it beyond conception that a decision to obtain a personal seat license, a season ticket, a game ticket, a stadium parking space or a hot dog at half time could conceivably be affected by whether the tickets, the players' uniform, the flags in the parking lot or the hot dog stand displayed the Flying B logo.

The Court's decision herein is based upon the inability of the Plaintiff to demonstrate a genuine issue of material fact (or even present a logical argument) that could cause a reasonable person to find that certain of the Defendants' categories of revenue (and thus profits) could be attributable to the infringement of Plaintiff's copyrighted work.

## IV. CONCLUSION

For the foregoing reasons:

1. Defendants' Motion for Partial Summary Judgment is GRANTED IN PART.

2. Defendants are entitled to summary judgment as to all claims for "profits of the infringer" except claims relating to:

 a. Profits derived from licensing others to sell merchandise bearing the Flying B logo.

 b. Profits derived from Defendants' sale of merchandise bearing the Flying B logo.

3. This Memorandum and Order does not resolve Plaintiff's claims for profits from "sponsorships."

## SUPPLEMENTAL MEMORANDUM AND ORDER

The Court has before it Defendants' Motion for Partial Summary Judgment and the materials submitted relating thereto pertaining to the matters left unresolved in the Corrected Memorandum and Order [1] of October 5, 2001 ("the Basic Decision"). Plaintiff's counsel has advised the Court that he does not request a hearing on the remaining issues. Accordingly, there shall be no further hearing.

---

1. The Memorandum and Order of October 5, 2001 was modified in certain nonsubstantive aspects for purposes of clarification and the correction of typographical errors.

In the Basic Decision, the Court set forth its decisional rationale and succinctly stated the pertinent guiding principle as follows:

> If the use of the Flying B logo to designate the Ravens could not reasonably be found to have affected the amount of revenue obtained from an activity, the revenue from that activity could not reasonably be found attributable to the infringement.

Applying this principle, the Court held that Defendants were entitled to summary judgment with regard to Plaintiff's claim for profits "attributable to the infringement" with respect to broadcast and other media licenses, ticket sales and general business revenues. Therefore, the Court concluded that "except for revenues derived from the licensing of merchandise sales, and possible sponsorships, there appears to be no category of revenues that could possibly be considered as attributable to the infringing use of the Shield Drawing in the creation of the Flying B logo. The Defendants shall be granted summary judgment as to all claims for profits from infringement except as to those profits derived from the licensing of merchandise, any sales of merchandise bearing the Flying B logo and, subject to later ruling, sponsorships." Basic Decision at 19–20.

Plaintiff was provided with the opportunity to engage in adequate discovery with respect to corporate sponsorships. The function of the discovery permitted was to obtain evidence as to the nature of the sponsor relationship and the income derived by the Defendants therefrom. If, and to the extent, that the qualitative evidence as to the nature of the relationship warranted, the Court would have permitted further discovery.

■ The evidence with regard to the nature of sponsorship and the revenue generated by Defendants is adequate to permit decision on the Defendants' partial summary judgment motion.

A sponsor pays the NFL or NFL Properties or an individual team for the right to designate itself as a "sponsor," to utilize NFL and team logos in its advertising and, in some instances, to sell products on which NFL and/or team logos appear.

With respect to revenue received from sponsors for the use of NFL and team logos in their advertising and to identify the sponsor with the NFL and its teams, Defendants are entitled to summary judgment. As discussed in the Basic Decision there is no reasonable possibility that any of this revenue could have been affected by the aesthetic features of the Flying B logo. The evidence, and common sense, establish beyond reasonable debate, that no part of the amount paid by the sponsors for the use of the Flying B logo (or any other team logo) was attributable to anything other than the team name and the goodwill associated therewith. Accordingly, as to sponsor payments for using team logos, including the Flying B logo, to demonstrate an affiliation with the NFL and Ravens, the Defendants are entitled to summary judgment.

■ Defendants acknowledge, as Plaintiff has demonstrated, that some sponsors sold merchandise bearing the Flying B logo. For example, Plaintiff has presented evidence of the Flying B logo on a Ford Ranger pickup truck and on boxes of Wheaties offered for sale by the respective manufacturer/sponsor. Under the principle of this Court's Basic Decision, the Defendants cannot obtain summary judgment as to the revenue derived from these uses of the logo. In these circumstances, the manufacturer/sponsor would be in the same position as a manufacturer/licensee of T-shirts. Hence, to the extent that Ford paid Defendants for the right to use the Flying B logo on the Special Edition

Ranger truck, some fraction of the payment could be found attributable to Plaintiff's protected rights in the appearance of the logo.

Defendants' counsel have represented, and the Court is relying upon the representation, that the Plaintiff will be, or has been, provided with information adequate to establish the extent to which sponsors have paid for the use of logos on sold merchandise. Accordingly, while Defendants are entitled to partial summary judgment as to revenues derived from sponsorships—as described above—they are not entitled to summary judgment as to receipts from sponsors to the extent that such receipts are attributable to the use of logos on merchandise sold by the sponsors. Such revenues are of the same nature, and belong in the same category for purposes of the instant cases as revenues derived from licensing the right to manufacture and/or sell merchandise bearing the Flying B logo.

Finally, the Court notes that Plaintiff presents evidence which, he contends, could lead to the conclusion that the Ravens made false statements in an arbitration with the Baltimore Orioles relating to stadium naming rights.

The Court sees no pertinence whatsoever to the dispute between the Ravens and the Orioles as to stadium naming rights. Nor would any alleged misstatement by the Ravens in that proceeding have any relevance to the matters now under consideration. Indeed, in the current context, the Court is not making findings based upon the Defendants' credibility. Rather, the Court is deciding, on the applicable summary judgment standard, the extent to which the evidence, viewed as favorably as reasonably possible for the Plaintiff, creates any genuine issues of material fact preventing an award of summary judgment to the Defendants.

For the reasons set forth in the Corrected Memorandum and Order of October 5, 2001 as supplemented herein:

1. Defendants' Motion for Partial Summary Judgment is GRANTED IN PART.

2. Defendants are entitled to summary judgment as to all claims for "profits of the infringer" except claims relating to:

 a. Profits derived from licensing others to sell merchandise bearing the Flying B logo. This category includes profits derived from payments by sponsors for the right to sell merchandise bearing the Flying B logo.

 b. Profits derived from Defendants' sale of merchandise bearing the Flying B logo.

3. By February 11, 2002, Defendants shall advise the Court and Plaintiff if the representation set forth in the last paragraph on page four hereof is incorrect.